## McALLISTER v. EALY.

No. 12366—Opinion Filed Jan. 22, 1924.

**1. Continuance — Sickness of Attorney — Discretion of Court.**

The sickness of an attorney is not one of the statutory grounds entitling the party to a continuance. It is discretionary with the court to grant or refuse it.

**2. Appeal and Error—Discretionary Rulings—Continuance.**

The granting or refusing of a continuance on account of the absence of counsel is a matter of discretion with the trial court, and, unless it appears that such discretion was abused to the prejudice of the substantial rights of a litigant, the action of such court will not be disturbed upon appeal.

**3. Fraud—Necessity for Proof.**

In actions at law and where a charge of actual fraud is involved in suits of equity not only is fraud never presumed, but it must be affirmatively alleged and proven by the party, who relies on it.

**4. Same—Elements of Actionable Fraud.**

Fraud is a fact to be established by evidence, as any other fact. The general rule is that before fraud can be established it must be shown that a material representa-

tion has been made; that it was false; that when it was made the speaker knew it was untrue, or that it was made recklessly, without the knowledge of its truth and as a positive assertion; that it was made with the intention that it should be acted upon by the one to whom it was made; that it was so acted upon by reason of the reliance placed upon it; and that damage or injury resulted thereby.

**5. Same—Evidence of Fraudulent Marriage Promise as Consideration for Contract.**

Where petition of plaintiff alleges a prior marriage agreement as an inducement to enter into a contract, which is sought to be set aside upon failure of defendant to perform said agreement to marry, and it is admitted by plaintiff in her testimony that the contract, sought to be set aside, was entered into prior to said agreement to marry, said marriage contract cannot be made a basis of recovery, and it was error to admit evidence of such subsequent marriage contract.

**6. Trial—Instructions—Requisites.**

It is the duty of the court to give instructions that are fairly correct in all material parts, and to state correctly the law as applicable to the case on trial, and not to state abstract principles.

**7. Same—Issues.**

It is error to give an instruction presenting to the jury a theory of the case, when there is no evidence to support the theory.

(Syllabus by Thompson, C.)

Commissioners' Opinion. Division No. 5.

Error from District Court, Tulsa County: A. C. Brewster, Assigned Judge.

Action by Emma J. Ealy against John H. McAllister for damages, injunction, and cancellation of mortgage and note and for costs. Judgment for plaintiff. Defendant brings error. Reversed.

Biddison & Campbell, for plaintiff in error.

Breckenridge, Bostick & Daniel, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Tulsa county, Okla., by Emma J. Ealy, defendant in error, plaintiff below, filing her petition against John H. McAllister, plaintiff in error, defendant below, for damages in the sum of $15,000, and for an injunction, enjoining plaintiff in error from disposing of certain property, and for the cancellaton of mortgage for the sum of $500, and for her costs.

The parties will be referred to as plaintiff and defendant, as they appeared in the lower court.

Plaintiff's amended petition alleges that

plaintiff and defendant were married on the 13th day of December, 1902, and lived together in the city of Tulsa until the 28th day of December, 1917, and that they had lived separate and apart from each other until the 12th day of August, 1918, at which time plaintiff obtained a divorce from the defendant; that at the time of the marriage she owned personal and real property, which was taken in charge by the defendant, who sold it and reinvested it in other property, taking title in the joint name of plaintiff and defendant; that he attended to all of her business affairs during the 16 years of their married life; that on account of her love and affection for him she reposed confidence in him and relied upon him; that at the time of the divorce they possessed a large amount of real and personal property, consisting of city property in Tulsa and a one-third interest in a ranch in Okmulgee county, plaintiff owning in her name a one-sixth interest and defendant owning a one-sixth interest, that at the time of the divorce proceedings defendant suggested to plaintiff that they list their various properties and affix a valuation to each item and then the plaintiff and defendant should select from said list, alternately, various pieces of property, so listed, which list was prepared by defendant and his own valuation placed thereon; that he listed the home place in the city of Tulsa at $8,000 and the ranch at $6,000, although there was a large amount of personal property on the ranch at said time; that plaintiff made the first selection and selected the ranch property, to the great surprise of the defendant, and he began immediately to try to convince the plaintiff that she had made a mistake in said selection, assigning various reasons why she should not have made this selection, among others that there was a large sum of money due on the ranch and that their partner would be dissatisfied; that she should have selected the home place, where she would have a place to live. and proposed an exchange, but she refused at first; but that she was finally induced to consent by false professions of love and affection and by reason of the relationship that had existed between them for many years, and had relied upon him to take care of her property, and upon his proposal that they remarry at the expiration of the six months' period from the time of the decree of divorce; that said agreement to remarry was entered into between the 14th and 30th days of August, 1918: that when said agreement had been entered into the defendant set about to have her exchange the ranch property, which she had selected, for the home place in the city

of Tulsa, and that by virtue of the false promise of remarriage and false professions of wanting to aid her, he finally induced her to make said exchange and to execute two mortgages on the town property, aggregating the sum of $3,000; that defendant continued to visit the plaintiff after this transaction and that plaintiff provided her trousseau and they arranged for their honeymoon trip, and defendant wrote her many letters of love and affection; that the defendant well knew that the plaintiff relied upon him, and believing his promises and statements, she had executed the exchange of properties and mortgage solely on account of the confidence, love, and affection which she had for him, and which he claimed he had for her, and that defendant knew that had he not promised to mend his ways and remarry the plaintiff she would not have exchanged the properties with him nor given him a mortgage on the premises; and that when the six-months' period had expired, the defendant refused to marry plaintiff and violated her confidence and the trust reposed in him, but was seeking to retain the benefits derived therefrom, and charged that the defendant made all the promises and induced plaintiff to part with the property, knowing full well that he did not intend to fulfill said promises to remarry said plaintiff, but that said promises were made with the intention of defrauding the plaintiff out of said property; that she afterwards discovered that the ranch property was worth $20,000, and that she had been damaged in the sum of $15,000, in the items of the $3,000 for the mortgage and $12,000 the difference between the price of the city property and the ranch and asked for judgment for the sum of $15,000, and for the cancellation of the $500 mortgage and costs.

Defendant answered by way of a general denial and also by cross-petition, asking for the foreclosure of the $500 mortgage on the home property in the city of Tulsa.

Plaintiff replied by way of general denial and pleaded fraud, undue influence, and failure of consideration against the mortgage.

The cause was tried to a jury, which resulted in a verdict for the plaintiff in the sum of $12,000.

A motion for new trial was presented, heard, and overruled; exceptions reserved and judgment pronounced upon the verdict of the jury in favor of the plaintiff and against the defendant in the sum of $12,-000, and for costs, from which judgment of the court the defendant appeals.

Attorneys for defendant set up 19 assign-

ments of error, but argue them under the propositions, first, that the court erred in not continuing the case and withdrawing the jury because of the fact that the attorney for defendant became too intoxicated in open court to properly continue the hearing of evidence. and on account of the effect that such intoxication had upon the jury and in refusing to give new counsel for defendant time to prepare for trial; second, that there was no allegation in the petition or evidence of actual fraud nor was there any evidence of confidential relations or constructive fraud; third, that the evidence showed that there was no agreement entered into between the parties to marry before all transactions in this action between them had been concluded, yet the court permitted testimony as to the engagement and arrangement for the wedding by the plaintiff, and admitted letters, written by the defendant to the plaintiff, long after the exchange of properties took place, to the prejudice of the defendant; fourth, that the court refused to admit the petition for divorce, offered by defendant in evidence, showing that she had charged him with being guilty of cruel and inhuman treatment, had choked her and threatened to kill her, which was offered for the purpose of controverting the evidence of special trust and confidence, love and affection; fifth, the refusal of the court to give certain instructions; sixth, that the court erred in the giving of certain instructions to the jury; and seventh, that the court erred in refusing to permit the defendant to prove by oral testimony the amount of indebtedness against the ranch property.

On the first proposition presented by attorneys for defendant, in their brief, that the court erred in not withdrawing the case from the jury and continuing the case over on account of the attorney for defendant becoming intoxicated during the taking of testimony upon the motion of defendant, presented by attorneys, the facts seem to disclose that the jury had been impaneled and the cause had proceeded to trial and the opening statement of counsel had been made and several witnesses had been examined and shortly after court convened after the noon recess attorney for defendant appeared to be in an intoxicated condition and not able to proceed with the case and started to leave the court room with the remark, "Just go ahead and examine the witness." The court ordered the bailiff to call the attorney and defendant, and upon the return to the court room a conference was held with the court, after which the court made the order, "This case will be continued until tomorrow morning at nine o'clock for the only and

express purpose of you getting you another attorney and you can depend upon the other attorney to conduct your case; you will have to get you an attorney now, Mr. McAllister, and get him ready and you will have to acquaint him with this record that the reporter has, so he can take charge of your case tomorrow morning at nine o'clock," after which he excused the jury until the next morning at nine o'clock with the statutory admonition, and with the further direction, "You should come back here tomorrow morning, gentlemen, without any impression on your mind, except such as made by the testimony in this case, so that you can give all parties a fair and impartial trial, and when you have done that, gentlemen of the jury, you have done all that you can do and all that we want you to do and I'm sure that is what you want to do." At the convening of court at nine o'clock a. m., March 1, 1921, Mr. Biddison, who had been employed by the defendant, appeared, together with the other counsel, who had conducted the case thus far, and who had "sobered up," whereupon a motion was filed by Mr. Biddison for a venire de novo, with or without a continuance. and assigned as a reason that the former counsel, who had defended the action from the commencement, in the preparation of the pleadings and in the trial of the case thus far, had appeared in the court room in an intoxicated condition and that because of such condition he was unable to proceed intelligently with the trial of the cause and that said condition of counsel was entirely without the procurement, knowledge, or consent of the defendant in the case, which statement of the counsel was ordered stricken from the record and after some colloquy between the court and counsel, Mr Biddison proceeded to make further statement that defendant was required by the court to employ counsel to proceed with the cause and that he did employ other counsel, who was wholly unfamiliar with the pleadings or with the evidence introduced in the cause or yet to be introduced, and that counsel so employed had been wholly unable to familiarize himself with the proceedings in the cause thus far and was unable to properly proceed with the case; that the defendant was in no wise at fault with the condition of his counsel on the day before, and the court then made the statement in the record that Mr. Biddison came to the court's chambers between two and three o'clock in the afternoon and obtained the files from the reporter in the case, came back and left the files in the chambers, stating he was going to make the motion above set forth, without having further investigated the case

or asked the reporter to go over the proceedings thus far with him; that at the time proceedings were stopped the then counsel for defendant had been ·in the court room, seemed to be able to examine the witnesses, so far as the court was able to observe, did not claim to be intoxicated, came to the court during the afternoon, soon after lunch and asked the court to continue the case and the court asked him if he were sober and he said he was and he and his client both asked the court to continue the case until this ·morning at nine o'clock, so that they could proceed with their case and the court, upon their motion, continued it until nine o'clock, but advised the defendant to procure additional counsel, but did not say that his then counsel should not appear in the case and overruled the motion for defendant. Certain evidence was taken in support of the motion of defendant, from which it clearly appears that the counsel was under the influence of an intoxicant and counsel for plaintiff, on his own motion, suggested that the case be continued until the next morning.

The evidence further shows that defendant immediately went to Mr. Biddison, who had been his attorney in the divorce proceeding, between the plaintiff and defendant, and must have been, in some measure, familiar with the case, as this proceeding grows out of the division of property, made at the time the divorce proceeding was settled. Mr. Butterworth, the former counsel, was in the court room and testified that he was feeling fairly well and that he was physically fit to proceed with the trial of the case, but would rather Judge Biddison would handle it and that he thought that he and Judge Biddison could possibly proceed with the trial of the case.

All of the above proceeding, on the motion to withdraw the jury, took place in the absence of the jury and upon the conclusion the jury was returned into court and the trial proceeded with both Mr. Butterworth, former counsel, and Mr. Biddison, the new counsel employed by defendant, present, and the defense was ably conducted and the rights of the defendant fully protected in so far as the conduct of the case by counsel is concerned. Counsel for defendant cite numerous authorities from other states in support of this assignment of error, but it is our opinion that this matter was entirely within the sound discretion of the trial court, as it was in no way the fault of the plaintiff that the defendant found himself in court with counsel in an intoxicated condition, and the court, at the request of defendant and his counsel and also upon request of counsel for plaintiff, continued the cause from about two o'clock in the afternoon until nine o'clock a. m., of the following day to give the defendant an opportunity to employ other counsel and to give an opportunity for his present counsel to "sober up," which, in our opinion, protected all the rights of the defendant in the matter and showed a liberal disposition on part of ·the plaintiff and her counsel ·to not take advantage of the defendant in any way on account of this unfortunate occurrence and the fact that the trial judge suggested to defendant to get other counsel was a further evidence that the defendant's rights were being protected in so far as was possible for the court to do so under the circumstances; to hold otherwise, the due and orderly proceedings of the courts of this county could be interrupted at any time by litigants employing counsel, who are addicted to the use of strong drinks, becoming intoxicated and thus interrupting and delaying proceedings of trials before the courts of this country.

The record does not disclose that there was anything that took place in connection with this unfortunate occurrence in presence of the jury that, in our opinion, could be construed as prejudicing the rights of the defendant; to hold otherwise would be a reflection upon the intelligence and honesty of the trial jury. And the further fact that Mr. Biddison, who was employed by defendant, was counsel for the defendant in the divorce proceeding, out of which this proceeding originated over the division of property, and the able manner in which he conducted the case shows conclusively that he had sufficient grasp of the facts and legal principles involved to protect the rights of the defendant in the cause. The only case from this court, cited by counsel for defendant, is the case of Wood v. Jones, 60 Okla. 111, 159 Pac. 325, which was a case where one of the parties to the action was unavoidably absent from the trial of the cause and the court in that case held that a continuance should have been allowed for the reason that the defendant, himself, should have been given a reasonable opportunity to be present at the trial to advise with and assist his attorneys in the presentation of the case, which presents an entirely different state of facts to the one presented here.

This court, in the case of Pierce v. Engelkemier, 10 Okla. 308, 61 Pac. 1047, denied the right of a continuance on the grounds of sickness and absence of one of the attorneys in the cause, and held:

"The sickness of an attorney is not one of the statutory grounds entitling the party

to a continuance. It is discretionary with the court to grant or refuse it."

In the case of Jones v. Thompson, 55 Okla. 24, 154 Pac. 139, this court held:

"The granting or refusing of a continuance on account of the absence of counsel is a matter of discretion with the trial court, and, unless it appears that such descretion was abused to the prejudice of the substantial rights of a litigant, the action of such court will not be disturbed upon appeal."

To like effect is the case of Pool et al. v. Riegal et al., 46 Okla. 5, 147 Pac. 1193, and 't is our opinion, upon the state of the record in this case, that the court did not err in overruling the motion of defendant, but that it was within the sound discretion of the court and this discretion was not abused.

Under the second proposition, argued by counsel for defendant, there are grouped eleven assignments of error, which, in our view of the case, is decisive of most of the questions raised upon this appeal. It will be observed that the petition in the case alleges that the exchange of properties was brought about and her consent to such exchange was obtained because of her confidence in the defendant and because of a marriage agreement and in fact the plaintiff alleges that there was an agreement to remarry entered into between the fourteenth and the thirtieth days of August, 1918, and that, thereafter, the defendant set about securing this exchange of properties. Her testimony upon this proposition was that the exchange of properties was made before any agreement was entered into between them to remarry and this evidence is conclusive, in which she says:

"Q. Didn't you say he promised to marry you and you promised him on the 12th of August? A. No, sir. I didn't say that he promised me. Q. When did you promise to marry him? A. I promised to marry him the first of September, after we had traded back and Mr. Martin was gone. Q. I say, the date—do you remember the date when you promised to marry him? A. I cannot recall it just now but I know it was between that and the 7th of September. * * * Q. The trade was made before you promised to marry him? A. Yes, sir."

Then, from the above evidence, it cannot be seriously contended that the exchange of properties was based upon a mutual agreement to remarry, as the plaintiff failed to prove the allegations of her petition of this fact, but, on the contrary, by her own testimony proved that the opposite fact existed and that there was no agreement between the parties at that time to remarry.

Upon the further proposition, contended for by plaintiff, that the plaintiff, because of the long marriage relation and her implicit confidence in the defendant, that she was induced to make the transfer, the facts clearly show that plaintiff and defendant had been married before, each having reared families, and that they came together and entered into the marriage relation late in life and that they lived together for the period of about 16 years; that their married life had not been pleasant and that she secured a divorce from the defendant but a short time before this transaction; that each of them was of full age, mentally capable of contracting, and that before this exchange of properties the plaintiff informed herself by going upon the ranch property, personally, taking with her her son and neighbor, with whom she was residing, who assisted her in the examination of this property and in ascertaining the worth and probable value thereof, and before and at the time of the exchange she consulted her attorney so she was fully informed of the value of the two properties and had advice upon that subject from the parties, above mentioned, and upon an investigation of the entire testimony in this case, we cannot find that there was any fraud, alleged or proven, that would entitle the court and jury to set aside an agreement of exchange of properties in controversy in this proceeding. The evidence futher showed that the plaintiff and defendant had not lived together from December, 1917, and it was shown, or attempted to be shown, by the defendant that the plaintiff had filed a divorce proceeding and secured her divorce, in which she charged him with having been guilty of serious acts of cruelty and mistreatment toward her, that he had cheated and defrauded her out of her property, and had been guilty of violating the sacredness of the marriage relation, and while it is true that the court refused to permit the defendant to introduce the sworn petition of plaintiff, containing these charges, which in our opinion, was error, it is very clear that, under the circumstances surrounding this case, the plaintiff could not have reposed that degree of confidence, and the relation of husband and wife having been theretofore dissolved by decree of divorce and no agreement having been entered into at the time of the transaction for a remarriage, that no such confidential relation existed between the plaintiff and defendant such as would entitle the court and jury to find that she had been overreached in this transaction on this account. The record in this case shows conclusively that plaintiff relied for the most part upon

the agreement to remarry for her recovery in this case. It seems that that was the theory upon which the petition was drawn and upon which the case was tried and upon which the case was submitted to the jury by the court, as appears from his instructions. There was no actual fraud or misrepresentation of facts, alleged or proven, which the defendant knew to be false and which the plaintiff believed to be true and relied upon. All the decisions of this court hold that when fraud is the basis of recovery, it must be specifically alleged and proven by the testimony. It will be sufficient to refer to the case of C., R. I. & P. Ry. Co. v. Penix, 61 Okla. 4, 159 Pac. 1141, which gives the general rule as follows:

"Fraud is a fact to be established by evidence, as any other fact. The general rule is that before fraud can be established it must be shown that a material representation has been made; that it was false; that when it was made the speaker knew it was untrue, or that it was made recklessly, without the knowledge of its truth and as a positive assertion; that it was made with the intention that it should be acted upon by the one to whom it was made; that it was so acted upon by reason of the reliance placed upon it; and that damage or injury resulted thereby."

See, also, 26 C. J. 1062; 27 C. J. 44; St L. & S. F. Ry. Co. v. Reed, 37 Okla. 350, 132 Pac. 355.

Based upon the testimony and the record, we are of the opinion that there was no evidence of actual fraud, nor was there evidence of such confidential relations existing between the parties that amounted to constructive fraud.

On the third proposition, raised by counsel for defendant in their brief, having found that there was no agreement entered into between the parties, as alleged in the petition to remarry, before all the transactions between them had been concluded, we are of the opinion that the court erred in permitting testimony as to the engagement for the wedding by the plaintiff, and the admission of the letters written by the defendant to the plaintiff, long after the exchange of properties took place, over the objection of the defendant, was error, and was prejudicial to the rights of the defendant in this action.

Upon the fourth proposition that the court refused to admit the sworn petition of plaintiff, offered by defendant in evidence, showing that she had charged him with being guilty of cruel and inhuman treatment and had choked her and threatened to kill her, and had cheated and defrauded her out of

her property, in light of the testimony that had already been admitted by the court as to the confidential relations and as to the trust reposed in defendant by plaintiff for the purpose of controverting the evidence of special trust and confidence, love and affection, admitted on behalf of the plaintiff, we are of the opinion this was reversible error and deprived the defendant of a substantial right to have all the facts and circumstances surrounding the relation of the parties to go to the jury. It cannot be seriously contended that the agreement to remarry and that the buying of the trousseau or that the contents of the letters influenced the plaintiff in the slighest degree in making the exchange of the properties at a prior date, and, upon examination of the instructions by the court, we find that the instructions complained of are based upon the agreement and confidential relations existing between the husband and wife, and in one of the instructions we find that the court instructed the jury and gave in charge to the jury a specific instruction concerning agreements executed directly by the husband and wife, and upon the question of intentional concealment, or misrepresentation, on part of the betrothed husband as to his property interests the testimony in this case does not warrant any such instruction and we think it was reversible error for the court to give such an instruction. In the case of Chickasaw Compress Co. v. Bow, 47 Okla 576, 149 Pac. 1166, it is said:

"It is the duty of the court to give instructions that are fairly correct in all material parts, and to state correctly the law as applicable to the case on trial, and not to state abstract principles."

In the case of White v. Oliver, 32 Okla. 479, 122 Pac. 156, it is held:

"It is error to give an instruction, presenting to the jury a theory of the case, when there is no evidence to support the theory."

The attorneys for defendant complain about instruction number four, in that the court told the jury that it was claimed by the plaintiff that after such division of their property rights had been obtained by plaintiff that she was induced by the defendant to exchange the ranch property, which she owned in the division between them, for the city property in Tulsa, which he owned as a result of such division, that such exchange was finally made by her on account of trust and confidence in and love and affection for defendant and his promise of remarriage to her, and that if the jury found such exchange were made, under such conditions,

that such contract was a contract of persons occupying confidential relations. The record shows that there was no mutual promise to remarry at the time of the exchange and upon the proposition of confidence, love, and affection, in our view of the case, there could not have been much of this after the procuring of the divorce at such a recent date. If such instruction given by the court in this case should be a proper one, then the stronger reason why the court should have admitted the petition of the plaintiff in the divorce proceeding that was offered by the defendant and refused by the court is that this instruction of the court, in the absence of this testimony, was prejudicial to the rights of the defendant upon the evidence admitted and the evidence offered by the defendant and refused by the court.

There are other assignments of error urged by attorneys for defendant, but, under the views of the court, as heretofore expressed in this opinion, the errors heretofore considered are sufficient for a reversal of the judgment of the trial court, and it is unnecessary to consider the other assignments of error in this cause and it is sufficient to say that for the errors occurring at the trial, heretofore considered, it is our opinion that the judgment of the trial court should be, and is hereby, reversed and remanded for a new trial.

By the Court: It is so ordered.