**HOUSE, Adm'x, et al. v. GRAGG et al.**

No. 25027.   Oct. 30, 1934.

Supplemental Opinion Feb. 12, 1935.

John A. Maupin, for plaintiffs in error.

Everest, McKenzie, Halley & Gibbens, for defendants in error Charles Funk, Neoma Funk, Annie Riggs Henry, and Noah Henry.

Rainey, Flynn, Green & Anderson, for defendants in error Flynn Oil Company, Howard D. Nelson, and W. C. McBride, Inc.

WELCH, J. This is an appeal from the district court of Oklahoma county. Plaintiffs in error, E. Ethel House, administratrix of the estate of Elvin House, deceased, and E. Ethel House, Lorene House, and Raymond House, a minor, by his mother and next friend, E. Ethel House, were plaintiffs in the trial court. There were numerous defendants in the trial court, but only the defendants, Neoma Funk, Charles Funk, Annie Riggs Henry, Noah Henry, Flynn Oil Company, a corporation, Howard D. Nelson, and W. C. McBride, Inc., are affected by this appeal. The parties will be referred to as plaintiffs and defendants as they appeared in the trial court.

The gist of the action is the recovery of blocks 27 and 30, Ferndale addition to Oklahoma City, Okla., and the cancellation of various instruments through which the defendants claim title to the land. The principal point in controversy is whether or not a quitclaim deed alleged to have been executed by Elvin House and his wife, E. Ethel House, on September 13, 1915, purporting to convey the land to A. J. House, was a forgery. The cause was tried to the court, resulting in a verdict in favor of the defendants, and quieting their respective titles in and to the land as prayed by them.

Plaintiffs have appealed, and first urge, as grounds for reversal, the failure of the trial court to grant them a continuance by reason of the absence of one of their counsel, John A. Maupin, on account of illness, and for the further alleged inability of plaintiffs to obtain the testimony of a witness.

Other assignments of error are urged, but we shall herein dispose of the questions in the order in which they are presented. This suit was filed on May 24, 1930, by Elvin House. The original petition was signed by John A. Maupin and Arnold C. Todd, as attorneys for plaintiffs. On April 16, 1931, Elvin House having died, a second amended petition was filed in the name of these plaintiffs, which petition was signed by Rittenhouse, Lee, Webster & Rittenhouse, and Arnold C. Todd, as attorneys for plaintiffs. Thereafter numerous pleadings were filed by the attorneys named other than Maupin, including motion to make additional parties defendants, affidavit to obtain service by publication, replies, notice to take depositions, etc.

The plaintiffs were represented at the taking of depositions by Mr. F. A. Rittenhouse and by Arnold C. Todd. The case was set for trial December 12, 1932, upon which date Mr. F. A. Rittenhouse, of counsel for plaintiff, sought a continuance, due to Mr. Maupin's illness, who was also plaintiffs' counsel. The court denied the motion for a continuance upon the ground that plaintiffs were ably represented by counsel who had been active in the case for more than a year. The court did, however, pass the trial of the case to the 14th day of December, 1932, out of deference to Mr. Maupin; and upon the suggestion that he would probably be able to participate in the trial

on that date. Plaintiffs' counsel were then fully informed by the court that the case would stand for trial on the 14th, and it is not shown that counsel, who were appearing for plaintiffs at the trial, were unable to possess themselves of any information which Mr. Maupin may have had and not then possessed by them. The record here shows that the trial court was duly considerate of plaintiffs' rights in this regard, and the refusal to grant a continuance upon the ground of illness of counsel was not error. Jones v. Thompson, 55 Okla. 24, 154 P. 1139; Pierce v. Engelkemeier, 10 Okla. 308, 61 P. 1047; Pool v. Riegal, 46 Okla. 5, 147 P. 1193; McAllister v. Ealy, 98 Okla. 223, 225 P. 146; Moss v. Louderback, 159 Okla. 286, 15 P. (2d) 37. Plaintiffs cite Kinnear v. Dennis, 97 Okla. 206, 223 P. 383, in support of their position. It is to be observed in that case that the parties seeking the continuance had no other counsel, and had no opportunity to employ other counsel in time to prepare for trial. We have pointed out that such condition did not exist in this case, and the plaintiffs here were not denied the right to be represented by counsel of their own choosing.

The motion for continuance to procure the evidence of a witness was based upon an alleged desire and inability to procure the testimony by deposition of Maggie Hooper, sister of A. J. House, who lived in Ontario, Canada. The deposition of this witness was filed in the cause on December 20, 1930. On June 14, 1932, this deposition was suppressed by order of the trial court for failure to comply with statutory requirements in taking the same. At the time the court ordered the deposition suppressed, a continuance was granted for the purpose of retaking the deposition of this witness. Plaintiffs made no further effort to take the deposition of this witness until late November or December, 1932, when notice was served that the deposition would be taken on December 7, 1932. Prior to the giving of this notice, the case had been set for trial for December 12, 1932. It appears that for some reason the deposition was not taken on December 7, 1932, in pursuance of the notice given. Under such circumstances it is our opinion that the plaintiffs have failed to show proper diligence in their efforts to procure this testimony. In Long v. Spriggs, 160 Okla. 282, 16 P. (2d) 243, we held:

"An affidavit for a continuance based upon the absence of a material witness, but showing no diligence to obtain the attend-

ance of such witness is fatally defective for want of a showing of proper diligence."

In the instant case plaintiffs having obtained a continuance in June, 1932, for the purpose of procuring this testimony, and having taken no action toward retaking the deposition until late November or December, 1932, and a very few days before the case was again set for trial, it is our conclusion that there is not a sufficient showing of due diligence to procure such testimony as would warrant the court in granting a continuance on that ground, and the court committed no error in denying the motion.

Plaintiffs next urge that the decree and judgment of the court is not sustained by sufficient evidence, and is contrary to law and contrary to the evidence. The record discloses that on and prior to March 25, 1911, Elvin House was the owner of the lots in question, and in possession thereof. On the last above mentioned date, he executed a mortgage thereon to his uncle, A. J. House, who lived in Iowa, as security for a loan of $1,500. On December 11, 1916, there was duly recorded in the office of the county clerk of Oklahoma county, a quitclaim deed dated August 12, 1915, purporting to have been acknowledged before a notary public on September 13, 1915, by Elvin House and Effie Ethel House, his wife, conveying the land in question to A. J. House for a recited consideration of $1,910.10. It is this deed which plaintiffs allege to be a forgery. This quitclaim deed contains the following provision:

"It is expressly agreed and understood that the acceptance of this deed by said second party shall not in any way affect the lien of the mortgage now held by said A. J. House, on said premises or his right to enforce against said premises the indebtedness thereby secured, and it is agreed that such mortgage or debt thereby secured is not to be considered as paid nor as merged in the title passing by this conveyance or to in any manner affect the right of A. J. House to foreclose said mortgage against said premises for the indebtedness thereby secured, including the taxes paid by him thereon as to obtain a decree of court barring the equity of redemption of any subsequent lienholder."

The original deed was not produced in evidence. The certified copy of the record thereof indicates that the same was duly acknowledged on September 13, 1915, by Elvin House and Effie Ethel House, before Hazel Dwyer, a notary public, within and for Oklahoma county, Okla. Elvin House died after the bringing of this suit, and before the trial of the cause, and his testimony was not taken.

A. J. House died several years prior thereto. The notary public, Hazel Dwyer, now Mac-Kinnon, testified that at the time of the trial she was living in Boston, Mass.; that during the years 1914 to 1918, she lived in Oklahoma City, during which time she maintained a public stenographic office, and was a notary public within and for Oklahoma county.

She testified that she had never seen Elvin House or Effie Ethel House prior to September, 1930, when they called upon her while she was ill in a hospital in Boston, and that she did not take their acknowledgments to the deed in question, and that she had never seen such original deed. Effie Ethel House testified that she never signed the quitclaim deed conveying the land in question to A. J. House, and that she never met Hazel Dwyer, now MacKinnon, prior to September, 1930, when she visited her in a hospital in Boston, Mass.; that she never appeared before Hazel Dwyer at any time and acknowledged the execution of any instrument, either alone or with her husband; that the only instrument that she ever signed, acknowledged, and delivered to A. J. House was the $1,500 mortgage in 1911, and that she and her husband never at any time appeared before any notary public and acknowledged a deed purporting to convey the land in question to A. J. House, and it is this evidence which plaintiffs contend constitutes the clear weight of the evidence in this cause, establishing the fact that the quitclaim deed was forged. The rule applicable in cases where it is sought to impeach a certificate of acknowledgment is stated in Dyal v. Norton, 47 Okla. 794, 150 P. 703, in paragraph 4 of the syllabus thereof, as follows:

"The evidence to impeach a certificate of acknowledgment should be clear, cogent, and convincing, and such as produces a conviction amounting to a moral certainty that the certificate is false."

In Wolverine Oil Co. v. Parks, 79 Okla. 318, 193 P. 624, we held:

"The act of a notary public in taking an acknowledgment is of a ministerial nature and not a judicial act. The presumption is in favor of the certificate unless there is contradictory evidence sufficient to overcome such presumption, and such contradictory evidence may be furnished by the notary, as well as any other witness in possession of the facts. The evidence, however, to impeach a certificate of acknowledgment should be clear, cogent, and convincing, and such as produces a conviction amounting to a moral certainty that the certificate is false."

These rules have been applied in Stidham v. Moore, 100 Okla. 26, 227 P. 128; Nickel v. Janda, 115 Okla. 207, 242 P. 264; Kline v. Mueller, 135 Okla. 123, 276 P. 200; Posey v. Van Tuyl, 135 Okla. 50, 273 P. 887.

Whether or not the evidence in this case is sufficient to satisfy the applicable rules of law is a question to be determined by the trial court from the evidence, and the judgment and conclusion of the trial court will not be disturbed unless clearly against the weight of the evidence. Jones v. Thompson, supra; Moss v. Louderbach, supra.

The trial court found that plaintiffs, by their evidence, failed to overcome the presumption in favor of the certificate of acknowledgment, and that the evidence adduced fails to satisfy the requirements of law, wherein it is sought to impeach such certificate of acknowledgment.

We now examine the record with a view of determining whether or not such conclusion of the trial court is against the clear weight of the whole evidence.

Elvin House and wife moved to Oklahoma county from Iowa in 1906, and, in 1909, acquired the property in question. Elvin borrowed some $300 from his uncle, A. J. House, who lived in Iowa, and, in 1911, borrowed an additional $1,200, and executed the mortgage on the land referred to. No suggestion is made that the loan was ever repaid. No suggestion is made that A. J. House, subsequent to 1915 or 1916, ever made any effort to collect the money from Elvin House. Plaintiffs make no showing of any effort on the part of any of the parties to adjust the debt represented by the mortgage subsequent to the date of the purported execution or recording of the quitclaim deed. Mrs. House testified that during about the time the mortgage was made, she and her husband fenced the land in question, drilled a water well, and were having plans drawn for building a home, and that they lived on a tract of land near by; and that in about the year 1916, shortly after the alleged execution of the quitclaim deed, she and her husband moved to Denison, Tex., where they lived about a year. It seems that although they then moved back to Iowa, and then back to Oklahoma county in 1927, they have never at any time exercised control over the property, nor is there any testimony to indicate that they in any manner claimed to be the owners thereof subsequent to 1915 or 1916. At about the time of the purported execution of the quitclaim deed, A. J. House took possession of same as the owner and paid

the taxes thereon until he sold the same to Clarence Trosper, after which his grantees have at all times paid the same. On December 31, 1924, A. J. House conveyed the land in question by warranty deed to Clarence E. Trosper, which deed was placed of record in the office of the county clerk of Oklahoma county on January 8, 1925, and thereafter the said Trosper and his assignees exercised open and notorious dominion over the property without protest from plaintiffs. On September 20, 1929, Elvin House and his wife executed a quitclaim deed to one Ibach to one of the lots for the sole consideration of $1, and it was after the execution of this deed when they first made any suggestion to any one that they claimed an interest in the land. On January 6, 1925, there was filed for record in the office of the county clerk of Oklahoma county an instrument designated "Satisfaction Piece," signed and acknowledged by A. J. House, which purports to release the mortgage dated March 25, 1911, given by Elvin House and wife. W. L. Keck, an attorney of Mequaketa, Iowa, testified that his father and A. J. House were law partners from 1876 until 1893, when the said A. J. House was elected district judge and served as such until 1927, when he retired at the age of 82 years; that A. J. House and the witness continued to use a joint library during the many years that Judge House served on the bench; that he assisted Judge House in the preparation of a quitclaim deed similar to the one in question, and containing the clause in question relating to the mortgage, and that such clause was inserted therein for the purpose of protecting the grantee from certain judgments supposed to have been rendered against the grantor, Elvin House, in Oklahoma county. On October 11, 1916, A. J. House filed an action to foreclose the mortgage in the district court of Oklahoma county. This suit was against Elvin House, Effie Ethel House, Tradesmen's State Bank, a corporation, et al. Before this suit was tried the defendants therein who held judgments against Elvin House and Effie Ethel House released these judgments, and thereafter the foreclosure suit brought by A. J. House was dismissed.

W. L. Keck testified that he and Judge House together searched the law in an effort to ascertain whether or not A. J. House could safely take a deed from Elvin House for the land, in view of the judgments rendered against Elvin House in Oklahoma county, and that after the deed was completed it was delivered to Judge House.

Frank Keck testified that in September, 1915, he conducted an abstract business in Mequaketa, Iowa, where Judge House lived; that he knew Judge House and Elvin House well and personally; that some time about the month of September, 1915, he received a letter addressed to him from Oklahoma City, written by Elvin House, enclosing to him the quitclaim deed in question, together with a sealed letter addressed to Judge House, and requested him to deliver the letter and the deed to Judge House, and that in pursuance of such letter and instructions he so delivered the same. A Mr. Brown testified that he lived in Iowa, and knew all of the parties well; that he owned a farm in Iowa, and that in 1926 or 1927, Elvin House lived on this farm with him; that Elvin House told him in a conversation that he had at one time obtained two five-acre tracts close to Oklahoma City, and that he and his wife had borrowed some money from Judge House, and then became involved in financial difficulties, and that he deeded the two five-acre tracts to Judge House in satisfaction of the obligation.

A Mrs. Stratton testified that, in the spring of 1928, she was at the home of a Mrs. Funk, one of the defendants herein, on a part of the land herein involved, and that Elvin House was there talking with Mrs. Funk, inquiring if there was any land in that vicinity which he could rent, and that during such conversation Elvin House stated to Mrs. Funk that at one time he owned the property where Mrs. Funk then lived, but on account of poor health he had been obliged to sell it to his uncle. Mrs. Funk testified to the same effect.

A Mrs. Soloman testified that in September, 1915, Mr. and Mrs. Elvin House were staying at her house while witness' mother and father were away attending the World's Fair in San Francisco. During such stay Mrs. House told her "they could not hold the tracts and they were going to let Judge House have them for what they owed him;" she further testified that in September, 1915, Mrs. House, upon returning from Oklahoma City to witness' home in Ferndale addition, told her "they had fixed up the papers, signing the tracts over to Judge House."

The record discloses that during the time the notary public maintained her office in Oklahoma City, she had numerous business transactions in her line; that she had no record of acknowledgments to which she might or did refer in determining whether or not

she took the acknowledgment in question; she did not specifically deny executing the certificate, and testified that she may have taken the acknowledgment of some Houses. She admitted in her testimony that the sole basis of her statement that she did not take the acknowledgment of Elvin House and Effie Ethel House to the instrument in question, was the fact that from her recollection she had never seen these people before September, 1930. The trial court in its conclusion pointed out the weakness of such testimony, and calls attention to the strong probability of a faulty memory, having due consideration for the 15 years lapse of time, and the probability of a very casual acquaintanceship such as is frequently formed in the mere taking of an acknowledgment. The trial court also calls attention to the fact that the deed appears here as a harmonious act. We observe that from about the time of the alleged execution of the deed and the bringing and dismissal of the foreclosure suit, all of the parties in any way involved acted and proceeded exactly as if the loan matter between the Houses was finally adjusted and closed. At no time from those dates is it shown that Elvin House or his wife even so much as made inquiry regarding the land until September, 1930. On the other hand, A. J. House assumed the control and management of the land as owner, and sold the same in 1925, after having regularly paid taxes thereon for many years, and conveyed the same by general warranty deed in the most usual and regular manner. Thereafter the several grantees went into possession and built houses thereon and lived upon the land. Although Elvin House again moved to Oklahoma City in 1927, there is nowhere in the record any showing that he or his wife made any move which could be construed as the slightest indication that they claimed an interest in the land. In September, 1930, when certain owners were about to convey certain interests in some portions of the land for oil and gas purposes, the land having become valuable for that purpose, an examiner of title, apparently out of an abundance of precaution, and apparently by reason of the peculiar clause in the deed regarding a mortgage, requested that a quitclaim deed from Elvin House and his wife be procured as affecting the portion of the land about to be conveyed; upon solicitation, Elvin House and his wife executed the quitclaim deed requested, for the sole consideration of $1. The execution of this deed for the nominal consideration of

$1 is inconsistent with their claim of ownership, but apparently it did serve the purpose of causing them to become curious regarding the condition of the title, and within a few days thereafter they examined the record, and for the first time since about 1916, commenced to evidence a claim of ownership in the property. It is true plaintiffs in this case claim that the quitclaim deed taken in 1930 was obtained by fraud and without consideration, but this contention is not inconsistent with our observation concerning their attitude upon executing the same.

We conclude that the finding and judgment of the trial court on the question of forgery is not against the clear weight of the evidence, but, on the contrary, that such finding and judgment is amply supported thereby.

Plaintiffs urge further that the courts erred in admitting certain incompetent evidence. The evidence which they discuss in their brief as incompetent was in the form of various exhibits. There were various letters purporting to have been transmitted between A. J. House and Elvin House and other persons regarding the loan matters, etc., and certain books and records alleged to have been kept by A. J. House. None of such evidence has been considered by us in arriving at the conclusion which we have reached herein, it being our opinion that the judgment of the trial court is amply supported by evidence which is unquestioned in plaintiffs' brief as to competency. It is nowhere pointed out in plaintiffs' brief that the introduction of such exhibit evidence has in any way prejudiced their rights, and no prejudice in that regard is apparent to us from the record. For the reasons stated, we will not further lengthen this opinion by determining the competency of the evidence discussed and attacked in plaintiffs' brief.

Various of the defendants pointed out many other legal barriers which they contend would prevent plaintiffs' recovery in this case. Having reached the conclusion already announced, a further consideration of these questions becomes unnecessary.

The cause is affirmed.

RILEY, C. J., and SWINDALL, McNEILL, OSBORN, BAYLESS, and BUSBY, JJ., concur. CULLISON, V. C. J., and ANDREWS, J., absent.

Supplemental Opinion.

PER CURIAM. This cause was submitted September 12, 1934, and an opinion rendered and filed October 30, 1934. On November 13, 1934, plaintiffs in error filed a motion to set aside the opinion of October 30th, on account of the death of the plaintiff in error, E. Ethel House, administratrix, on October 12, 1934. The death of said plaintiff in error was not suggested until the filing of the motion by the attorney for the plaintiff in error. The defendant in error has filed a motion to recall the mandate and to date the opinion as the date of the submission of the cause. In the case of Spencer, Adm'x, v. Hamilton, 156 Okla. 194, 13 P. (2d) 81, under a similar set of circumstances, this court said:

"While the fact of said death between the submission and decision does not impair the validity of the judgment, in order to preserve all rights thereunder, said decision and opinion filed herein February 23, 1932, is hereby recalled and set aside, and the clerk of this court is directed to refile said opinion and enter the judgment of this court in this cause nunc pro tunc, as of February 2, 1932, the date when said cause was submitted. Bell v. Bell, 181 U. S. 179, 45 L. Ed. 804; Goldsborough v. Hewitt, 26 Okla. 859, 110 P. 906; Kaw Boiler Works v. Frymyer, 105 Okla. 177, 231 P. 1059."

It is therefore ordered that the clerk of the court refile said opinion, and enter a judgment of this court in the cause nunc pro tunc September 12, 1934.