## STARRITT v. LONGCOR et al.

No. 26837.    Feb. 16, 1937.

W. E. Crowe, for plaintiff in error.

Mitchell & Mitchell, for defendants in error.

PER CURIAM. This action was brought by Clem Starritt against Chas B. Longcor and George Cassidy praying that a deed covering 160 acres of land in Garfield county be declared a mortgage; that the defendants be required to receive the payment of the amount tendered as due; that the deed be canceled, and that plaintiff recover possession of the lands.

The defendants answered denying that the deed in question was a mortgage. The defendant, Chas B. Longcor, asserted title to the lands under the deed and pleaded that he was a purchaser from J. S. Ellis, the grantee in the deed, for value and without notice of the plaintiff's claim. By his cross-petition he asked that his title be quieted as against the claim of the plaintiff. The trial court found that Longcor was a purchaser in good faith, for value and without notice, and rendered judgment for him upon that ground.

There is much evidence in the record as to the transactions between the original parties. We have examined it with much interest. It cannot be briefly summarized. If that evidence is not decisive of this ap-

peal, it is unnecessary to burden this opinion with a recital of it. Had this action been between the original parties, the trial court apparently would have sustained the plaintiff's claim. If the trial court correctly reached the conclusion that the defendant Longcor was a purchaser in good faith, for value, and without notice, and was entitled to protection as such, then the merits of the controversy as between the original parties need not be determined on this appeal.

The plaintiff contends that the defendant Longcor had both actual and constructive notice of her claim of title. If he had either actual or constructive notice, then he of course stands in no better position than did his grantor, J. S. Ellis. On the other hand, if he paid fair value, without notice, either actual or constructive, he must be protected regardless of the rights that the plaintiff might have been able to assert as against J. S. Ellis.

On the question of actual notice, the controversy hinges largely on a conversation between T. A. Starritt and the defendant Longcor. This conversation occurred at the T. A. Starritt home in Pontotoc county. An Enid real estate man, as the agent of J. S. Ellis, offered the land for sale to the defendant Longcor. On information obtained from the tenant, Longcor went to the Starritt home. Longcor testified that he advised Starritt that he was about to buy the land from J. S. Ellis for the sum of $3,500, and that Starritt replied that he had sold the land to Ellis. Such a reply was in accord with the record title. According to this testimony, Starritt made no claim whatever to the land for either himself or his daughter.

On the other hand, T. A. Starritt testified that on this occasion he told the defendant Longcor that the land could not be bought for $3,500, that Ellis did not own the land, that Ellis merely held a deed to secure himself for advancements and that the land belonged to himself, T. A. Starritt, or to his daughter.

The Starritt version of this conversation was supported by three other witnesses: The plaintiff herself, daughter of T. A. Starritt; Aggie Trammell, sister of T. A. Starritt; and another witness who was not related to them. These three witnesses all stated that the conversation took place very close to the Starritt house; in fact, between the house and the garage. The daughter and sister claimed to have heard the conversation through an open window. On the other hand, Longcor himself and his son and his son's wife testified that the conversation took place from 100 to 200 feet from the house of the Starritts and out of the hearing of any other person except the two parties to the conversation. The son and his wife testified that they were waiting in the car while the two talked, that they could not hear and that no one else was close enough to hear.

Within a few days after this conversation the defendant Longcor accepted the title, paid the consideration of $3,500 as had been agreed upon, and obtained the deed from Ellis. Later he obtained possession of the lands.

As indicated, the plaintiff claims that through this conversation the defendant had actual knowledge of her claim of title.

The trial court found this issue in favor of the defendant and against the plaintiff. If the trial court's finding and judgment on this issue is against the weight of the evidence, then we must go further into the record and determine the merits of the controversy as between the Starritts and Ellis.

Both parties refer to authorities reciting the rule which governs this court in its review of the findings of the trial court in an equitable action. There is little or no difference in the rule as stated by the parties.

The case of House v. Gragg, 170 Okla. 550, 44 P. (2d) 832, states the rule as follows:

"This court, on appeal in an equity case, will examine and weigh the evidence, but will not reverse the judgment because of the insufficiency of the evidence, unless it can be said that the judgment is against the clear weight thereof."

This is a correct statement of the rule and has been announced by this court on many occasions.

Counsel for plaintiff in his able brief strongly contending that the finding of the trial court on this issue is contrary to the weight of the evidence, refers to the fact that four witnesses, including the plaintiff herself, testified to their version of the conversation, while only the one witness, the defendant Longcor himself, testified to the defendant's version. He contends that this amounts to four witnesses against one.

While his statement is in a manner correct, we are unable to follow it to his conclusion. It is true that the defendant Longcor was the only one who testified to his version of the conversation. He is, however, supported by the other two witnesses who corroborated his statement as to the

setting and the location of the parties and who denied that anyone else was present or within hearing of the two parties to the conversation. If the testimony of those two witnesses, Harold Longcor and Imogene Longcor, is true, then the testimony of the three witnesses who corroborated T. A. Starritt cannot well be true.

We believe that the condition is more fairly reflected if it is stated that there were four witnesses as against three, rather than four witnesses as against one. However, the question of the weight of the evidence is not determined by the number of witnesses testifying on the one side or the other. Neither the fact that four witnesses testified against three, nor that four witnesses testified against one, would necessarily control the finding. See Brock v. Williams, 16 Okla. 124, 82 P. 922, stating:

"Where a judgment is reasonably supported by the evidence, it will not be disturbed * * * because the greater number of witnesses may have testified for the other party."

In reaching his conclusion, the trial court appears to have been influenced by the fact that shortly after this conversation the defendant Longcor proceeded with his contemplated purchase, paid the agreed price and obtained the deed to the property from Ellis. To this might be added the fact that the defendant Longcor apparently dealt cautiously. He drove from Enid to Ada to interview T. A. Starritt, who had deeded the property away. He obtained an affidavit to the effect that Sadler, who made the deed to Ellis, was single, though the land was unimproved and had obviously never been occupied by Sadler.

It is difficult to believe that the defendant Longcor, an elderly business man, would pay the consideration and acquire the title in the face of a definite and positive statement by Starritt claiming the land for himself or his daughter. Even if, as suggested by counsel for plaintiff, Longcor thought that the warranty of J. S. Ellis would protect him against loss, it is difficult to believe that he would thus walk into certain litigation where he was not previously involved.

There is a conflict in the evidence as to the value of the land, but the defendant offered very substantial evidence to the effect that the value was not in excess of the price paid by him. The evidence as a whole would not indicate that the land at $3,500 represented a sufficient bargain to tempt Longcor to make a purchase in the face of an adverse claim.

The record contains nothing that would reflect upon the integrity or business character of the defendant Longcor. On the other hand, the record of T. A. Starritt is not so clear. This very difficulty grew out of his business of making criminal appearance bonds. He had been convicted on a whisky charge, and was in the federal penitentiary for counterfeiting at the time he gave his testimony in this case. He states that he had been charged with murder, but had "beat that case."

Considering the entire record, we clearly would not be justified in concluding that the finding of the trial court on this issue was against the weight of the evidence.

The plaintiff also claims that the defendant Longcor was told by the tenant that the land belonged to her and that this gave him actual notice of her rights. The testimony of the tenant, A. Luedeman, is far from being either clear or satisfactory. On the other hand, the defendant Longcor and the real estate agent, Floyd Brown, testify definitely that Leudeman did not mention the daughter, but referred only to T. A. or Tom Starritt as the owner. As their testimony was clear, we could not conclude that the finding of the trial court on that point was against the weight of the evidence. Also, as hereinafter indicated, we are not able to draw a distinction between the title or claim of T. A. Starritt and that of his daughter, the plaintiff.

On the question of actual notice, we are therefore unable to sustain the plaintiff's contention.

Considering the question of constructive notice by possession, we find these circumstances. Although the plaintiff, Clem Starritt, according to her evidence, held her deed since almost the beginning of these transactions, she had withheld it from record and had allowed her father to deal with the land as he saw fit and had referred to him as the owner. Even after she knew of the sale to the defendant and after this dispute had arisen, she wrote a letter stating that T. A. Starritt was the owner. During this time also she made a rental contract in the name of T. A. Starritt, signing as his agent.

T. A. Starritt himself seems to have had difficulty in keeping in mind that the property was supposed to belong to his daughter, and explains that he figures that he could get it back from her any time. The record

shows that T. A. Starritt was rather in the habit of placing his titles in other names and had held a substantial portion of his Pontotoc county land in the name of the plaintiff.

Under such circumstances, we cannot conclude that the plaintiff held her claim to the title in her own right, and certainly not on such a basis as to give her any greater or better right than her father would have held in his own name. We would consider her possession the same as that of her father.

Possession by a grantor holding over after the delivery of his deed is not notice to a prospective purchaser from the grantee in the deed. The fact that T. A. Starritt retained possession of the lands would not have been notice to Longcor that he retained any rights in the land after the conveyance to J. S. Ellis.

See F. B. Collins Investment Company v. Wade, 70 Okla. 191, 195, 173 P. 835, 838:

"The general rule as to the presumption arising from possession as to the ownership of land is subject to the exception that, where the possession is in the vendor of the claimant, the mere possession by the vendor does not require upon the part of the one dealing with the claimant as to his title to such land to investigate, as such possession of the vendor is not such knowledge as to put him upon inquiry as to the title of claimant to such land."

This rule is well established and almost uniformly followed. The deed placing the title in J. S. Ellis contained no defeasance clause and no separate instrument showing the defeasance clause was recorded. The defendant was therefore entitled to purchase in reliance upon the record, and having under the trial court's finding purchased in good faith, and without notice, may hold the land as against the claim of the plaintiff.

See section 11264, Oklahoma Statutes 1931:

"When a grant of real property purports to be an absolute conveyance, but is intended to be defeasible on the performance of certain conditions, such grant is not defeated or affected as against any person other than the grantee, or his heirs or devisees, or persons having actual notice, unless an instrument of defeasance duly executed and acknowledged shall have been recorded in the office of the register of deeds of the county where the property is situated."

We need not, therefore, determine the merits of the controversy as between the Starritts and J. S. Ellis.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Earl Q. Gray, William G. Davisson, and Stephen A. George in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Gray and approved by Mr. Davisson and Mr. George, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

BAYLESS, V. C. J., and RILEY, PHELPS, CORN, and GIBSON, JJ., concur.