In re ALTERATION OF SCHOOL DISTRICT BOUNDARIES OF DISTRICT NO. 42 AND CONSOLIDATED NO. 41, CUSTER COUNTY.

No. 29654. July 16, 1940.

Rehearing Denied Sept. 10, 1940.

Application for Leave to File Second Petition for Rehearing Denied Oct. 1, 1940.

*105 P. 2d 536.*

Arney & Barker, of Clinton, for plaintiffs in error.

Meacham, Meacham & Meacham, of Clinton, for defendants in error.

DANNER, J. This appeal arises out of a proceeding to annex a common school district to an adjacent consolidated school district, both districts being in the same county. From an order of the county superintendent annexing the district certain taxpayers residing in the territory affected appealed to the district court, where they were unsuccessful, and they have appealed to this court.

The first assignment of error is that the trial court erred in overruling the protestants' "demurrer to the proceedings of the county superintendent." Stated more precisely, the contention is that neither the transcript of proceedings which was filed in the district court by the county superintendent, nor the evidence adduced at the trial in the district court, showed that any order of annexation was ever made by the county superintendent; that therefore the district court should have held that the proceedings of the county superintendent did not culminate in any valid order. It is conceded that no formal written order of annexation was made, but petitioners assert that nevertheless an order or decision was actually made, as evidenced by the following notice, which was signed on June 16, 1939, and posted on June 18, 1939:

"Ten Days' Notice
of the Alteration of School District
Boundaries

"Notice Is Hereby Given, That on the 15 day of June, 1939, I changed the boundaries of School District No. 42, Township No. 14, Range No. 19 & 20 County of Custer, State of Oklahoma, as follows:

"1. By attaching All of District No. 42 to School District No. Con. 41, Twp. 13 & 14, Range No. 19 & 20, Custer County.

"And that if no appeal be taken within ten days of the posting of this notice, I will complete said change.

"Dated this 16 day of June, 1939. (Seal)

"Orville J. Prier
"County Superintendent of
Public Instruction."

"Posted by me this 18 day of June, 1939, in five public places of District No. Con. 41, Township No. 13 & 14, Range No. 19 & 20.

"Carl McClung."

The testimony of the county superintendent reveals that he made no written order, unless the above notice sufficed for that purpose. About the closest he came to testifying that he had made such an order was in the following question by the court and answer thereto:

"By the Court: Mr. Prier, do you mean you made the order but didn't make any record of it?

"A. Outside of this record. These notices are called the official record of the office regarding the districts. However, we have a plat book, giving the boundaries on a map, and also the official county map that we make the changes on. It is outlined in red pencil giving the boundaries."

(He did not change the boundaries in the plat book or on the map. He intended doing it later, but did not do so, due to the subsequent filing of notice of appeal.)

Although our somewhat complicated statutes relating to schools and school districts do not appear to require a written order, they repeatedly speak of "orders" and "decisions," and appeals therefrom. The appeal in the present case was governed by section 6779, O. S. 1931, 70 Okla. St. Ann. § 597, and section 6778, O. S. 1931, as amended by S. L. 1939, page 171 (H. B. 85, § 1), 70 Okla. St. Ann. § 596, pocket part. Section 6778, as amended, reads:

"Any person or persons feeling aggrieved at any order or decision of the county superintendent of public instruction, made or entered in any proceeding now pending, or hereafter instituted before any such county superintendent, pertaining to or affecting the boundary of any common, union graded or consolidated school district, or the membership of the school boards thereof, may appeal from such order or decision to the district court. Such appeal shall be taken as hereinafter provided."

Section 6779 reads:

"If the appeal be from any order pertaining to the boundary of any school district, the appeal may be taken by one-fourth of the taxpayers residing in the territory affected by filing the notice of appeal hereinafter provided for. * * * Such notice of appeal shall be in writing and shall be filed with the county superintendent, within five days from the date of the rendition of such order or decision. Such notice of appeal need not state any reasons for such appeal. Such matters shall be tried de novo upon appeal."

In passing upon matters of this kind we must of course effectuate a practical, as distinct from technical, application of the law to the facts as they exist in the particular case. No protest had been filed with the county superintendent. Apparently there had been no objection to the proposed change. We presume that a hearing was had on June 15, 1939, pursuant to a "twenty-day" notice thereof which had been posted on May 22, 1939, but such presumption is all that we do have, since the record is silent on the question. We have no way of knowing whether the county superintendent, on June 15, 1939, announced aloud in his office that he would make the change, or whether, on the other hand, there being no opposition, he simply made up his mind to that end and kept the matter to himself. At any rate, we have the record of a written

instrument, dated June 16, 1939, which is called a notice but which also recites that on the preceding day, June 15, 1939, "I changed the boundaries * * * by attaching," etc. This was the record of the order. According to the county superintendent's testimony it was the only kind of a record that they customarily kept of the entering of such orders, other than changing the map and plat when orders became final. We think the evidence susceptible of the inference that an order was made, however much we may disapprove of the informal manner in which it was accomplished.

We have spoken above of what the parties mistakenly called a "ten days" notice of the order having been made. No question is raised concerning necessity of such a notice. However, as set forth in section 6779, supra, the appeal time is five days, not ten days. That section, enacted in 1931, amended the ten days appeal period formerly prescribed by section 6771, O. S. 1931, 70 Okla. St. Ann. § 31, in any manner pertaining to or affecting the boundary of any common, union graded, or consolidated school district. School District No. 9, Carter County, v. Dickson Consolidated Sch. Dist. No. 77, Carter County, 181 Okla. 121, 72 P. 2d 508.

The second assignment of error is that "the district court abused its discretion in ordering this cause set for trial before the same was filed or docketed in said court." The record does not reflect the date upon which the protestants filed their notice of appeal with the county superintendent. Since the defendants in error, however, concede in their brief that "the applicable statutes have been fully complied with," we must assume that the notice of appeal was filed within time, and on some date which was, in no event and under no construction of the five-day appeal provision, later than June 23, 1939, or earlier than June 15, 1939. On July 10, 1939, the petitioners (defendants in error) in open court orally moved that the matter be set for hearing. The attorney for protestants was present and objected, on the ground set forth above. It is true that at that particular time of the day the transcript had not yet been filed with the clerk of the district court. The record recites that the court heard argument of counsel and became fully advised. It may be that he became advised that the transcript was being filed that same day, for it appears that it was in fact filed on the same day, though obviously at a later hour. The court found that "although no transcript has been filed in this court by county superintendent, said cause should be set down for hearing in order to be heard before the 15th day of July, 1939, the date on which school district estimates for the fiscal year should be made up by the county excise board,"—and ordered that it be set for trial on July 14, 1939.

We might assume that this contention would ordinarily be a good one and that the court would abuse its discretion in setting down for hearing a matter which was not officially before it. It might even be argued that the court would lack the power or jurisdiction to make such an order at all. But, as applied to the instant case, the objection is more technical than of substance. Since the transcript was in fact filed on the same day, possibly within an hour after the making of the order, we fail to perceive how, as a practical matter, it worked any substantial prejudice to the protestants or how it could make any particular difference to them whether the transcript was filed an hour later, or an hour earlier, than the making of the order. We do not agree that the principle suggested, although it probably is of merit as an abstract proposition, should be applied to the facts of this case.

It is next contended that when the trial judge on July 10, 1939, set the matter down for hearing to be had on July 14, 1939, over the protestants' objection, he committed reversible error in forcing them to trial in violation of section 395, O. S. 1931, 12 Okla. St. Ann. § 666. That section reads:

"Actions shall be triable at the first term of court, after or during which the

issues therein, by the time fixed for pleading are, or shall have been made up. When the issues are made up, or when the defendant has failed to plead within the time fixed, the cause shall be placed on the trial docket, and if it be a trial case shall stand for trial at such term ten days after the issues are made up, and shall, in case of default stand for trial forthwith. When any demurrer shall be adjudged to be frivolous the cause shall stand for hearing or trial in like manner as if an issue of fact had been joined in the first instance."

The defendants in error say that the present controversy is not an "action," within the meaning of the above statute, but that it is a special proceeding, citing section 8, O. S. 1931, 12 Okla. St. Ann. § 3 (that remedies in the courts of justice are divided into first, actions, and second, special proceedings), and sections 9 and 10, O. S. 1931, 12 Okla. St. Ann. §§ 4 and 5 (that "an action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense," and that "every other remedy is a special proceeding.")

But we need not resort to that distinction. We think the statute reveals its own inapplicability. The issues referred to are the issues made by the pleadings. That is, if it be a trial case, it shall stand for trial ten days after the issues are made up by the pleadings. If it be the trial of an appeal, de novo, on the pleadings as already made up, then there are no issues to be formed and the statute is not absolutely controlling as a matter of law, whatever may be said as to whether an abuse of discretion has occurred, which is a different subject and which is hereinafter considered. In the present kind of appeal, there is no "time fixed for pleading," and there is no provision for pleadings after appeal to the district court at all, although it probably would be within the power of the court to permit pleadings or amendments. The notice of appeal, according to section 6779, supra, is not even required to state any reasons for such appeal, and it is further provided that the "matters shall be tried de novo," etc.

In view of the foregoing, we hold that the statute is not applicable. Such holding, by analogy, is in harmony with Black v. Warren, 178 Okla. 216, 62 P. 2d 88, which see.

But the plaintiffs in error also contend that even though the statute be not applicable, the trial court nevertheless abused its discretion in setting the trial for hearing with only four days' notice, and then not granting their oral application for a continuance, on the day of the trial, due to their inability to locate and interview witnesses over the extensive school district area within that time. At this point it is suggested that the granting or refusing of continuances is a matter resting largely in the trial court's discretion. That is correct, but the mere repetition of such a generality solves nothing. There still remains the more specific problem of determining whether, as a matter of actual reality, an abuse of discretion has or has not occurred.

We have two sections of our statutes governing such a situation. Section 396, O. S. 1931, as amended by S. L. 1937, page 1, section 1, 12 Okla. St. Ann. § 667 (amendment in pocket part), and section 397, O. S. 1931, 12 Okla. St. Ann. § 668. Insofar as applicable to this case, section 396 provides that the court may, for good cause shown, continue an action at any stage of the proceedings upon terms that may be just, and that when a continuance is granted on account of the absence of evidence it shall be at the cost of the party making the application unless the court orders otherwise. Section 397 relates especially and solely to continuances sought on account of the absence of evidence, and provides that in such case a motion for continuance can be made only upon affidavit, showing the materiality of the evidence expected to be obtained, that due diligence has been used to obtain it, and where the evidence may be. There is a further requirement, if the evidence is to be had from an absent witness, that the affidavit show where

the witness resides, if his residence is known, and what facts it is believed the witness will prove. There are other requirements in the section which need not be stated.

In Kansas, from which state we took the sections, it was held that when an affidavit did not conform to the section requiring the affidavit (397), it could be considered by the court under the other section (396). Moon v. Helfer, 25 Kan. 139. That ruling obviously referred to the *power* of the court to grant a continuance, not to the necessity of filing the affidavit as a prerequisite to charging the court with abuse of discretion in denying the continuance. This court has used both sections in considering the question of continuances on account of absent evidence or witnesses. See numerous cases cited in annotations following the sections in Okla. St. Ann., supra.

The question whether the court has abused its discretion is vitally affected by what the movant himself has or has not done, affecting the situation of which he complains. Under both of the sections, where the continuance is sought on account of absence of evidence or witnesses, it is held that it is incumbent on the movant to show the exercise of due diligence by him to obtain the evidence, before he may complain of an abuse of discretion in denying the continuance. Culp v. Trent, 99 Okla. 112, 226 P. 348; Chortney v. Curry, 99 Okla. 69, 225 P. 950; Swenson v. Aultman, 14 Kan. 273; Murphy v. Hood & Lumley, 12 Okla. 593, 73 P. 261; Grant v. First State Bank of Miami, 96 Okla. 254, 221 P. 769; House v. Gragg, 170 Okla. 550, 44 P. 2d 832. Section 397, supra, expressly requires the showing of due diligence, and requires the affidavit mentioned therein. See Houk v. Galleciez, 89 Okla. 175, 214 P. 689, concerning the affidavit.

In both of these respects the protestants failed. They filed no affidavit, and they made no showing that due diligence had been used to obtain the evidence, or any evidence, or any witness,

to sustain their position. In fact, the record does not reveal the exercise of any diligence at all. It is true, as they say, that only four days elapsed between the setting and the trial. Much ground may be covered in four days. Enough, at least, to make a prima facie showing of "due diligence." Yet no witness was called to the stand by the protestants, nor was there any showing that they had made any effort whatsoever to locate or obtain any witness or witnesses or any evidence from other sources. They do not in their brief contend that they made any effort; they excuse the failure by asserting abstractly that the time was too short for them to work up their evidence. This is not "due diligence." Due diligence requires some overt effort; it is not satisfied by surrender without attempt.

We therefore hold that no abuse of discretion occurred.

The judgment is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, GIBSON, HURST, and DAVISON, JJ., concur. RILEY and CORN, JJ., absent.