OSCN Found Document:DON KEENAN v. TODD RUSS, in his capacity as the Treasurer of the State of Oklahoma

 

 
 DON KEENAN v. TODD RUSS, in his capacity as the Treasurer of the State of Oklahoma2026 OK 20Case Number: 122686Decided: 04/07/2026THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2026 OK 20, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

DON KEENAN, Plaintiff/Appellee,
v. 
TODD RUSS, in his capacity as the Treasurer of the State of Oklahoma, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT FOR OKLAHOMA COUNTY

¶0 Plaintiff filed suit in in the District Court and alleged the Energy Discrimination Elimination Act of 2022 (74 O.S. §§ 1200174 O.S. §§ 12001

JUDGMENT OF THE DISTRICT COURT AFFIRMED IN PART

Collin R. Walke, Hall Estill, Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Gary M. Gaskins, II, and Zach West, and Will Flanagan, Office of the Oklahoma Attorney General, Oklahoma City Oklahoma, for Defendant/Appellant.

T. Matthew Smith, Criterion Legal, Oklahoma City, Oklahoma, for amicus curiae Oklahoma Retirees Association, in support of Plaintiff/Appellee.

Rachel L. Fried and Victoria Nugent, Washington, D.C., Democracy Forward Foundation, for amicus curiae Oklahoma Retirees Association, in support of Plaintiff/Appellee.

Ashley E. Quinn and Craig D. Martin, Morrison & Foerster, LLP, San Francisco, California, for amicus curiae Ceres, Inc., in support of Plaintiff/Appellee.

EDMONDSON, J.

¶1 We conclude the appeal may proceed based upon the appellate briefs and submission of the appeal to the Court before Keenan's death. We conclude Keenan, a retired employee who had previously made contributions to, and later received benefits from, the Oklahoma Public Employees Retirement System, possessed standing to seek injunctive relief in the District Court. We conclude the Energy Discrimination Elimination Act of 2022 (EDEA) (74 O.S.Supp.2025 §12001

I. THE CONTROVERSY

¶2 Keenan filed suit in 2023 claiming the Energy Discrimination Elimination Act of 2022 (74 O.S. §12001

¶3 Keenan's petition alleged the Act violated five provisions of the Oklahoma Constitution, Art. II, §6 (barrier to court access), Art. II, §7 (due process), Art. II, §22 (freedom of speech), Art. V, §46 (special law prohibition), and Art. XXIII, §12 (exclusive purpose for trust). Keenan requested a temporary restraining order and a temporary injunction. The trial court granted a temporary injunction to preserve the status quo.

¶4 The District Court sustained Keenan's requests for partial summary judgment by orders filed September 20, 2024, October 29, 2024. The trial court's order filed September 20, 2024, made its previous temporary injunction a permanent injunction and prevented the Treasurer from enforcing the Act. The trial court concluded the Act violated: (1) Okla. Const. Art. XXIII § 12 (exclusive purpose of benefits clause for the public retirement system), 

¶5 The Treasurer appealed the trial court's order, and this Court retained the appeal. Before addressing the merits of the Treasurer's arguments challenging the trial court's order, we must first address a procedural issue raised by the parties.

II. Death of Appellee After Submission of the Appeal

¶6 A motion to retain the appellate cause in the Supreme Court was granted in December of 2024, and assigned to the Supreme Court for an appellate decision on January 16, 2025. Motions concerning the appellate record, extensions of time, and requests for briefing and appearances of amici curiae were filed. Treasurer filed a motion for a briefing schedule. The Court set a briefing schedule for the parties but specifically excluded amici curiae briefs. The Court then suspended briefing on the merits prior to briefs being filed. Appellee's counsel filed a "notice of suggestion of death" stating the death of appellee and included a motion for substitution.

¶7 The Court invited briefs on the effect of Keenan's death on the appeal. Keenan's counsel suggested no substitution for Keenan was necessary. Keenan's counsel also suggested that if a substitution was necessary, then an individual, unnamed by counsel's filing, could be added as a substitute appellee with the Court's approval. The motion for substitution did not address the unnamed individual's specific cognizable legal interest in the litigation or in Keenan's legal interests. Treasurer suggested Keenan's counsel had no client before the Court, and that filings by Keenan's counsel were improper. Counsel for both parties suggest a lack of recent express authority on proper procedure for appellate substitution after a party's death.

¶8 Historically, a defendant could file a plea in abatement and plead a "plaintiff not in rerum natura (plaintiff not "in existence" or not "in the world [or things], of nature").

¶9 Current appellate practice and procedure makes direct appellate review of a judgment or appealable order a part of, or continuation of, the "same trial court case." 12 O.S.2021 § 1052

¶10 Treasurer argues the Court may apply 12 O.S. §202512 O.S. §1080

The motion for substitution may be made by any party or by the successors or representatives of the deceased party . . . Unless the motion for substitution is made within ninety (90) days of service of the statement of death, the action shall be dismissed without prejudice as to the deceased party . . .

In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

Treasurer argues a 12 O.S. §2025required for the Court to adjudicate this appeal.

¶11 In Campbell v. Campbell, 1994 OK 84878 P.2d 103712 O.S. §202512 O.S. §2025Id. ¶19, 878 P.2d at 1041-42. However, guidance from F.R.C.P. 25 has limited application since appellate substitution of a party in a federal appellate court is not by F.R.C.P. 25, but Federal Rule of Appellate Procedure 43 ("Substitution of Parties"). We note Rule 43 contains language similar to language in Rule 25.

¶12 Treasurer argues that if a proper substitution does not occur, then Keenan's underlying trial court cause of action adjudicated by the trial court must have abated upon death of appellee during the appeal. Treasurer states he previously objected to the legal standing of Keenan. Treasurer states he must have an opportunity to object to the legal standing of any individual offered as a substitute appellee for Keenan. Treasurer's argument also indicates that if substitution does not apply, then the Court must adopt a procedure that requires a new party to file a new action in the District Court. This would create a result similar to the common-law requirement and result of instituting a new action after a party's death. Treasurer indicates he is entitled to appellate relief requiring the trial court to vacate its orders in a post-mandate proceeding.

¶13 Counsel for Keenan argues a judgment was obtained and the Court may apply 12 O.S.1971 §108112 O.S.1971, §1080

¶14 A portion of the parties' dispute requests an analysis of 12 O.S.1981, §108012 O.S.2021, §1081Gardner v. Boston, 1977 OK 201571 P.2d 437Gardner we stated: (1) 12 O.S.1971, §1080"i.e., to actions pending in the trial court or cases pending on appeal," and (2) 12 O.S.1971, §1081"i.e., to those cases where a trial court judgment has become final without appeal or judgments that have become final on appeal." Id. ¶14, 571 P.2d at 440.

¶15 Treasurer correctly notes that: "Under Oklahoma law we have held that the authority of a deceased party's attorney ceases upon the death of that party." Campbell v. Campbell, 1994 OK 84878 P.2d 1037Campbell v. Campbell, supra. However, we note some courts have distinguished (1) an attorney's lack of authority to represent a deceased client, (2) an attorney's independent authority or obligation to notify a court of a party's death, and (3) an attorney's obligation file a motion for substitution when required. Courts have addressed circumstances when one or more of these three concepts may be either permissive or obligatory for counsel of the deceased. 

¶16 We may take judicial cognizance of the notice of Keenan's death in counsel's motion. We need not base our dispositional analysis of the procedural issue upon any other fact or conclusion of law raised by Keenan's counsel made in a filing after the death of Keenan. We analyze the procedural issue based upon Treasurer's filings. Treasurer raises a statute, now repealed 12 O.S.1971 §108012 O.S. §2025

¶17 Treasurer's use of 12 O.S.1971 §1080

(c) Any action which is taken after the death of a party and before the substitution of his representative or successor, including but not limited to ruling on motions, perfecting an appeal, and rendering judgment, shall be valid provided that the rights of any party are not prejudiced by the fact that the court proceeded without substitution of the personal representative.

12 O.S.1981, §108012 O.S.Supp.1984, §202512 O.S.1981, §1080

¶18 Prior to enactment of section 1080, we explained death of a party during an appeal after submission for adjudication did not affect the correctness of the opinion and mandate of an appellate court, McKee v. Thornton, 1921 OK 166198 P. 303Id. at ¶¶1-2.

¶19 When a sole party appellant or appellee died after submission of an appeal, an appellate court could, "to preserve all rights thereunder," cause an appellate opinion to be filed without modification to its reasoning, but also modify its opinion, and when necessary recall its mandate, withdraw the Court's opinion; and in either case with or without modification, direct the Clerk of the Court to issue the mandate with the date the appellate cause was submitted to the Court. 12 O.S.1971, §1080

¶20 One of the various reasons for these procedures was the Court's recognition that an available statutory remedy for vacating an order included the death of a party: "The District Court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter: . . . Sixth. For the death of one of the parties before the judgment in the action." 12 O.S.2021, § 1031solely due to the death of a party. 

¶21 Generally, a party may make a prejudgment challenge to an opposing party's legal relationship to the alleged cause of action and request for judicial relief. A non-exhaustive list of such challenges includes issues relating to real party in interest, standing, necessary party, capacity, limitations, repose, setoff, counterclaims, recoupment, cross action, cross bill, and many others. These prejudgment challenges may require the trial court to focus on an issue of law, or issue of fact, or mixed issue of law and fact. 

¶22 An appellate court exercising appellate jurisdiction does not make first-instance determinations on an issue of fact based upon a fact appearing outside the certified appellate record, except in limited circumstances. 

¶23 The Court has allowed a substitution when (1) requested by either the person seeking to be substituted or a party, and (2) the opposing parties either agree to the request for substitution or a party has failed to timely object. 

¶24 The Court may adjudicate an appellate cause based upon the date the cause was submitted to the Court by Treasurer and Keenan. Amici curiae have appeared but their filings on the issues shall not be considered. The appeal was brought pursuant to Rule 1.36, Oklahoma Supreme Court Rules, which provides for the trial court filings to serve as the appellate briefs. 

¶25 The final date for the opinion and appellate mandate shall not prejudice Treasurer's right to raise in the District Court upon remand a cognizable legal claim or defense based, in whole or in part, upon Keenan's death. The final date for the opinion and appellate mandate shall not prejudice a legally cognizable substitution, if any, for Keenan in the District Court upon remand.

III. Trial Court Proceedings, Appellate Review, Assignments of Error,
and Standing

¶26 Treasurer sought dismissal of Keenan's petition, Keenan sought summary judgment on requests for injunctions, and injunctions were granted to Keenan by a summary judgment procedure. A summary judgment to a plaintiff determines the existence of a cause of action with a conclusion all elements of the action are present, and no defense has been successfully interposed. de novo by exercising a "plenary, independent, and non-deferential authority to determine whether the district court erred in its legal rulings." 

¶27 Appellate review of an order granting a preliminary injunction examines whether an abuse of discretion occurred, "when a decision is clearly against the weight of the evidence, contrary to law, or contrary to established principles of equity." de novo. de novo standard of review that gives a plain and unambiguous meaning consistent with the intent of the Legislature and the People when the challenged language was created. 

¶28 The District Court found and concluded that the Act violated five (5) separate provisions of the Oklahoma Constitution. Treasurer's petition in error raises seven assignments of error. Appellate adjudication of the first three disposes of the appeal, 

¶29 Treasurer filed a motion to dismiss and challenged Keenan's standing. Treasurer argued Keenan's alleged standing was based upon a threat of future economic loss and violation of the Oklahoma Constitution. Treasurer argued that: (1) Keenan lacked an immediate and direct injury, (2) Keenan's alleged injury was hypothetical, (3) Keenan's specific State pension will not be subject to financial market influences or forces, 74 O.S. §12002

¶30 Treasurer filed a response to Keenan's motion for "partial summary judgment." Treasurer states the Trustees of the Oklahoma Public Employees Retirement System voted to exempt the retirement system from the Act. He also states a purpose of the Act that "seeks to protect State funds by ensuring that the private entities managing those funds do not subordinate their fiduciary duty to activist political goals." 

¶31 In summary, the Act states a state entity is required to divest from a financial institution that uses ESG as part of its investment strategy, but this investment strategy by a financial institution may result in a comparative greater, lesser, or equal financial return for the state entity than an institution not using ESG principles. Treasurer recognizes this circumstance and states the Act creates a dual duty for a state entity, (1) a state entity's duty to divest from certain financial institutions pursuant to the Act, and (2) a state entity's duty for maximizing investment return that is also consistent with all fiduciary obligations possessed by the state entity. Treasurer also notes the Act states that if a state entity determines its fiduciary duty conflicts with divestment of investments, then the state entity may delay divestment of the state's investment. 

¶32 Treasurer's response to Keenan's motion for summary judgment states the Act is designed to prevent financial institutions from boycotting or discriminating against energy companies. 

¶33 Treasuer's argument may be summarized: A state entity exercising official discretion pursuant to the Act must divest its financial investments from certain financial institutions. However, a state entity may exercise an official discretion and create an exception to application of the Act and not immediately divest, or alternatively delay the divestment, in certain circumstances.

¶34 Treasurer argues Keenan has no standing because the official discretion exercised at this time has not created a divestment relating to the Oklahoma Public Employees Retirement System (OPERS). Keenan's argument is that Okla. Const. Art. XXIII, §12, prohibits any exercise of discretion required by the Act, and he possesses standing because of his public employee retiree status, OPERS claiming to exercise an official discretion pursuant to the Act, and Treasurer's efforts to change both the manner and result of the discretion exercised by OPERS pursuant to the Act.

¶35 In Thomas v. Henry, 2011 OK 53260 P.3d 1251Id. at ¶3, 260 P.3d at 1253. The Court expressly rejected this view of taxpayer standing: "We agree with the trial judge that there is a sufficient involvement of public funds at issue to warrant taxpayer standing . . . [and] [t]he Attorney General's interpretation that taxpayer standing can arise only when dealing with appropriated funds is too restrictive." Id. ¶7, 260 P.3d at 1254. Treasurer's argument that taxpayer standing must be based upon an appropriated fund or illegal expenditure is the same argument that was previously and expressly rejected as too restrictive. Thomas, supra.

¶36 In Fent v. Contingency Review Board, 2007 OK 27163 P.3d 512Id. at ¶8, 163 P.3d at 520. In Brandon v. Ashworth, 1998 OK 20955 P.2d 233Id. at ¶7, 955 P.2d at 235. In Independent School District No. 9 of Tulsa County v. Glass, 1982 OK 2639 P.2d 1233Id. ¶¶8-11, 639 P.2d at 1237-38. Brandon was based upon allegation of "illegal use" of public funds, and in Glass an illegal use was alleged with regard to third parties where the illegal use could potentially lessen an amount of public funds available to plaintiff in the future. Legislation concerning the use of public funds may involve "a matter of public right." Fent, supra.

¶37 Treasurer refers to a decision by OPERS and states no injury will occur to Keenan for the purpose of standing. Keenan seeks relief against Treasurer. The record before us includes a letter from the Oklahoma State Pension Commission, signed by Treasurer as Chairman of the State Pension Oversight Commission, and addressed to the Executive Director and Board of Trustees for OPERS (Board). The letter states: "Pursuant to the EDEA, certain firms were identified as being engaged in such boycotts [against energy companies] . . . The Boards's actions were in opposition to the letter and spirit of the EDEA [Energy Discrimination Elimination Act], because the situation presented did not fall within the EDEA's narrow exceptions . . . The Board should immediately begin a new RFP process . . . hold another hearing at which the Board can make a decision that complies with the EDEA and its fiduciary duties." 

¶38 The Treasurer's letter states the Board should determine for all investment funds "how the up-front switching costs should be weighed against what appears to be long-term savings and superior performance." 

¶39 The appellate record shows Treasurer's efforts to change the Board's decision, and for the Board to investigate and calculate, or reinvestigate and recalculate, all public funds paid as costs to the challenged financial companies. The letter also states the Board should accomplish financial divestment with specific companies. When responding to Keenan's motion for summary judgment, Treasurer takes issue with Keenan's assertion concerning costs associated with switching investments: "For OPERS, several funds would have included zero 'switching costs.'"

¶40 Treasurer relies upon his letter to OPERS. Eight funds are identified in Treasurer's letter to OPERS. According to Treasurer repeating OPERS, three funds have a "near-zero switching cost" of $27K, $4K, and $1K. Four funds are identified as having an estimated percentage of the fund as a switching cost. The Treasurer's letter states three of these funds have a $5.88 million, $2.98 million, and a $577K cost for switching. Treasurer objects to these assessments and states "further analysis should have been conducted."

¶41 The District Court granted a temporary injunction, and the order's "Findings of Fact" includes: "The OPERS Board of Trustees ("Board") estimated the cost of commissions, taxes, and fees related to divestment activity mandated under the Act to be $9,700,000.00 to OPERS." 

¶42 Treasurer objects to Keenan's statements of material fact raised in Keenan's quest for partial summary judgment where Keenan's recitation of facts is based upon the temporary injunction of the District Court. Treasurer states: "Objection. Statements made in an interlocutory order do not constitute material fact." 

¶43 A trial court may make an "interlocutory finding of fact," and the descriptive "interlocutory" is often made with reference to a finding that is (1) not subject to an immediate appeal, or (2) used for a temporary enforceable order, which may be subject to an immediate appeal, but additional proceedings are necessary to make judicial relief permanent based upon either the earlier finding or additional findings. 

¶44 Again, in the context of summary judgment procedural burdens, a plaintiff's summary judgment must show all elements to the cause of action are present. McGee v. Alexander, supra. Keenan uses an allegation of fact that costs would be incurred by OPERS if the Act was applied.

¶45 Treasurer's letter to OPERS was introduced as an exhibit during the District Court's hearing in February 2024 on Keenan's request for a temporary injunction. Treasurer's letter states concerning one fund, switching costs would occur but the amount, $28,000 was minimal when compared to the total amount of the fund invested. Two additional funds had a switching cost of $5,000 and less than $2,500, and Treasurer argued these amounts were minimal. Treasurer also analyzed "Funds with Meaningful Switching Costs." One conclusion by Treasurer was a recommendation for OPERS to switch from one entity to another and the projected costs of switching could be covered if the new entity receiving the funds "could continue to outperform . . . and erase the difference over time." Treasurer argued a switching cost of $575,000 could be overcome with savings over six years if funds were placed with a different entity. Treasurer stated a projected switching cost of "about $3 million" for one fund needed to be evaluated based upon the fund's performance and fee savings. Treasurer argued that based upon past performance in 2022 of Treasurer's recommended entity for receiving an investment instead of the one designated by OPERS, the fund could have saved more money than the switching costs had OPERS previously switched investments. Treasurer argued switching costs, and potentially more amounts, could be erased over time "as the fund grows" with the newly invested entity recommended by Treasurer. Treasurer argues Keenan will not suffer harm.

¶46 Keenan is a retired employee, and we noted concerning defined benefit plans: "in all defined plans is a lack of certainty" concerning assumptions for contributions required and investment yields expected for future payments from the plan, and actuaries are typically employed to assist managers of a defined pension plan. 

¶47 Treasurer argued that switching costs were a disputed factual issue for the purpose of summary judgment. Treasurer had a summary judgment procedural burden to "respond with some evidentiary material that would demonstrate a need for a trial on the issue." 

¶48 Keenan argued the Board's discretion was controlled and guided solely by a constitutionally specified duty with a constitutionally limited purpose for the funds at issue. Keenan sought an injunction alleging an unconstitutional official policy by the Treasurer that sought to alter a discretion exercised by the Board when effectuating a purpose defined by the Oklahoma Constitution. Keenan's standing for his claim in equity against the Treasurer is not based upon an alleged breach of a fiduciary duty owed to him by OPERS, and we need not define, analyze, or adjudicate the scope of the "fiduciary duty" discussed by the parties. Keenan's standing was based upon the Treasurer's application of the EDEA to OPERS. We conclude Keenan possessed standing to commence his request for injunctive relief in the District Court for the purpose of challenging Treasurer's application of the EDEA to OPERS. Brandon, supra., Glass, supra., and Fent, supra.

IV. Okla. Const. Art. XXIII, §12, and the EDEA (the Act)

¶49 When a legislative act is unconstitutional in its entirety on one ground, the Court need not examine additional constitutional claims against the Act. 

¶50 The parties' controversy raises the issue whether the Energy Discrimination Elimination Act of 2022 (74 O.S. §12001

All the proceeds, assets and income of any public retirement system administered by an agency of the State of Oklahoma shall be held, invested, or disbursed as provided for by law as in trust for the exclusive purpose of providing for benefits, refunds, investment management, and administrative expenses of the individual public retirement system, and shall not be encumbered for or diverted to any other purposes.

Okla. Const. Article XXIII, § 12 (emphasis added). We must give effect to the intent of the constitution's framers and the people adopting the constitutional provision at issue. i.e., we examine "the text of the instrument itself," "and when the text is not ambiguous, the court may not look for a meaning outside its bounds." 

¶51 Where language in the constitution "'asserts a certain right or lays down a certain principle of law or procedure, it speaks for the entire people as their supreme law and is full authority for all that is done in pursuance of its provision. In short, if complete in itself, it executes itself.'"

¶52 We need not examine all circumstances creating mandatory and self-executing constitutional language. Historically, constitutional language expressing prohibition is classified as mandatory and self-executing. by itself show mandatory and self-executing language. 

¶53 Statutes may supplement the constitutionally mandatory "exclusive purpose" when the statutes make the exclusive purpose more effective. For example, 74 O.S.2021, §909.1solely in the interest of the participants and beneficiaries and: 1. For the exclusive purpose of: a. providing benefits to participants and their beneficiaries, and b. defraying reasonable expenses of administering the System." Id. §909.1(A) (1) (a) & (b) (emphasis added). But statutes may not change, amend, or alter the constitutionally specific self-executing "exclusive purpose" in Okla. Const. Art. XXIII, §12. 

¶54 A typical analysis of a constitutional provision examines whether the provision has "a distinct purpose." for benefits, refunds, investment management, and administrative expenses of the individual public retirement system.

¶55 Treasurer states, "There were two purposes behind the Act." 

¶56 The EDEA provides a requirement that a "state governmental entity" shall "sell, redeem, divest, or withdraw all publicly traded securities of the financial company," acting in violation of the Act, with certain exceptions provided.

2. Not later than the ninetieth day after the date the financial company receives notice under paragraph 1 of this subsection, the financial company shall cease boycotting energy companies to avoid qualifying for divestment by state governmental entities. . . .

4. If, after the time provided by paragraph 2 of this subsection expires, the financial company continues to boycott energy companies, the state governmental entity shall sell, redeem, divest, or withdraw all publicly traded securities of the financial company, except securities described by subsection E of this section, according to the schedule provided under subsection D of this section.

74 O.S.Supp.2025, §12003

¶57 The EDEA also contains the following language.

B. With respect to actions taken in compliance with the Energy Discrimination Elimination Act of 2022, including all good-faith determinations regarding financial companies as required by this act, a state governmental entity and the Treasurer are exempt from any conflicting statutory or common law obligations including any obligations with respect to making investments, divesting from any investment, preparing or maintaining any list of financial companies, or choosing asset managers, investment funds, or investments for the state governmental entity's securities portfolios.

74 O.S. §12002

3. A state governmental entity shall not be subject to any requirement of this act if the state governmental entity determines that such requirement would be inconsistent with its fiduciary responsibility with respect to the investment of entity assets or other duties imposed by law relating to the investment of entity assets.

74 O.S. §12002

¶58 We construe, if possible, a statute as internally consistent and consistent with the constitution. 

¶59 A constitutional conflict with this argument by Treasurer is that the constitutional language of "exclusive purpose" and "any other purposes" is expressly tied to the duty and authority of the Board's constitutionally recognized "investment management." Generally, "management" involves an exercise of discretion or decision-making authority. exclusive purpose of providing for benefits, refunds, investment management, and administrative expenses of the individual public retirement system." Okla. Const. Art. XXIII, §12.

¶60 We conclude that application of 74 O.S. §12003

¶61 The Energy Discrimination Elimination Act of 2022 (74 O.S. §1200175 O.S. § 11a

¶62 The Act contains six statutes, and other than the initial section providing the name for the Act, all sections relate to the process of divesting funds held contrary to the Act as defined by the Act. In §12002, a section providing definitions "as used in the Energy Discrimination Elimination Act of 2022," a paragraph states several types of individuals as follows.

D.1. A person . . . retiree . . . or any other person shall not sue or pursue a private cause of action against the state, a state governmental entity, . . .or any other officer of a state governmental entity, . . . for any claim or cause of action, including breach of fiduciary duty, or for violation of any constitutional, statutory, or regulatory requirement in connection with any action, inaction, decision, divestment, investment, financial company communication, report, or other determination made or taken in connection with this act.

2. A person who files suit against the state, a state governmental entity, an employee, a member of the governing body, or any other officer of a state governmental entity, or a contractor of a state governmental entity, is liable for paying the costs and attorney fees of a person sued in violation of this section.

74 O.S.§12002

¶63 We need not analyze or discuss differences involving statutes seeking to bar (1) different types of causes of action, (2) different types of remedies (e.g., damages, positive and negative forms of equitable relief, declaration of rights, etc.), (3) different types of parties in claims involving the exercise of a governmental power or authority (e.g., the state, state entities, state officials, private parties, etc.), or (4) Keenan's Okla. Const. Art. II, §6 claim74 O.S.§1200274 O.S.§1200274 O.S.Supp.2025, §1200374 O.S.Supp.2025, §12002

¶64 We conclude Energy Discrimination Elimination Act of 2022 (74 O.S. §12001

V. Conclusion

¶65 We conclude the appeal may proceed based upon the appellate briefs and submission of the appeal to the Court before Keenan's death. We conclude Keenan possessed standing to commence his request for injunctive relief in the District Court. We conclude Energy Discrimination Elimination Act of 2022 (74 O.S.Supp.2025 §12001

¶66 We direct the Clerk of this Court to file the Court's opinion with the date received by the Clerk, and a petition for rehearing, if filed, may be filed within twenty days of the date the opinion is filed with the Clerk.

¶67 When issuance of mandate herein is required by the Rules and practice of this Court, unless a subsequent order of this Court modifies the Court's opinion, the Clerk of this Court shall withdraw the Court's opinion from the Court's docket and refile the opinion with issuance of the Court's mandate, and both opinion and mandate bearing the same date on the docket of the Court, i.e., the date the cause was submitted to the Court on January 16, 2025. The final date for the opinion and appellate mandate shall not prejudice a legally cognizable substitution for Keenan in the District Court upon remand. The Judgment of the District Court is Affirmed in Part as directed by the Court's opinion.

¶68 CONCUR: WINCHESTER, EDMONDSON, COMBS, GURICH, and DARBY, JJ.

¶69 DISSENT: ROWE, C.J., by separate opinion; KUEHN, V.C.J., by separate opinion; and KANE, J., by separate opinion.

¶70 RECUSED: JETT, J.

FOOTNOTES

74 O.S.Supp.2025, §§12001

74 O.S.Supp.2025, §12005

2. Except as provided by paragraph 4 of this subsection, a governmental entity shall not enter into a contract with a company for goods or services unless the contract contains a written verification from the company that it:

a. does not boycott energy companies, and

b. will not boycott energy companies during the term of the contract.

All the proceeds, assets and income of any public retirement system administered by an agency of the State of Oklahoma shall be held, invested, or disbursed as provided for by law as in trust for the exclusive purpose of providing for benefits, refunds, investment management, and administrative expenses of the individual public retirement system, and shall not be encumbered for or diverted to any other purposes.

See, e.g., Boston Type & Stereotype Foundry v. Spooner, 5 Vt. 93, 95, (1833) ("The nonjoinder of a person who ought to have been made a plaintiff may be plead in abatement, and advantage may also be taken of it under the general issue...That there may be a plea in abatement, to the disability of a plaintiff, denying his existence, shewing that there is no such person in rerum natura, as that at the commencement of the suit he was a fictitious person is recognized in 1 Com. Dig. tit. abatement, E. 16; 1 Chitty pleadings, 435-6; Guild vs. Richardson, 6 Pick. 370 [23 Mass. 364, 1828]; Doe vs. Penfield, 19 John. 308." (material and citations omitted and partial citation added).

Glazier v. Heneybuss, 1907 OK 112

12 O.S.1961, §1065to Hopkins v. Nat. Bank, 1920 OK 118188 P. 667Glazier v. Heneybuss, supra at note 5.

Tulsa Industrial Authority v. City of Tulsa, 2011 OK 57270 P.3d 113Grider v. USX Corp., 1993 OK 13847 P.2d 779

See, e.g., Johnson v. Snow, 2022 OK 86521 P.3d 1272

See, e.g., Palmer v. Belford, 1974 OK 73527 P.2d 58912 O.S.1971 §1081

See, e.g., Brown v. Wheeler, 437 So.2d 521, 523 (Ala. 1983), (discussing state's version of F.R.C.P. Rule 25, attorney's authority to act on behalf of a client ceases on the death of that client, attorney continues to have a duty to the court after the demise of that client and inform the court and other parties of the death), overruled on other grounds Hayes v. Brookwood Hosp., 572 So.2d 1251 (Ala. 1990) (rule-provided time for substitution was subject to excusable neglect standard); Mullis v. Bone, 143 Ga.App. 407, 238 S.E.2d 748 (1977) (attorney properly filed a notice of client's death and was not required to indicate identity of proper parties for substitution); Farmers Ins. Group v. District Court of Second Judicial Dist., 181 Colo. 85, 507 P.2d 865cert. denied sub nom., Lambert v. Supreme Court, 414 U.S. 878, 94 S.Ct. 156, 38 L.Ed.2d 123 (1973) (attorney's obligation to file a motion to substitute proper party).

Boyes v. Masters, 1911 OK 77114 P. 710

Smith v. Kimsey, 1943 OK 121138 P.2d 94

See, e.g., Kaw Boiler Works v. Frymyer, 1924 OK 1151231 P. 1059ldsborough v. Hewitt, 1910 OK 217110 P. 906citing Bell v. Bell, 181 U. S. 179, 21 Sup. Ct. 551, 45 L. Ed. 804 (1901); and opinions from Alabama, Illinois, Indiana, and California); see also, House v. Gragg, 1934 OK 60144 P.2d 832Spencer v. Hamilton, 1932 OK 8713 P.2d 81

Town of Jefferson v. Hicks, 1912 OK 578126 P. 739

Amoskeag Sav. Bank v. Eppler, 1938 OK 21077 P.2d 1158Wells Fargo Bank, N.A. v. Heath, 2012 OK 54280 P.3d 32812 O.S.2011, §1033

Town of Jefferson v. Hicks, supra note 14, 126 P. at 741.

Mosely v. Southern Mfg. Co., 1896 OK 8046 P. 508cf. Kolp v. State ex rel. Comm'rs of Land Office, 1957 OK 9312 P.2d 483

Matter of Estate of Crowl, 1987 OK 13737 P.2d 911

See, e.g., America's Car Mart, Inc. v. Cantrell, 2025 OK 73578 P.3d 154Bailey v. Campbell, 1991 OK 67862 P.2d 461

House of Realty, Inc. v. City of Midwest City, 2004 OK 97109 P.3d 314

We are not presented with one of the circumstances involving the Court's inherent power to appoint a referee, master, or commissioner for the purpose of making findings of fact for the Court during an appeal. See, e.g., In re Adopting of Baby G., 2008 OK 92195 P.3d 377Hadnot v. Shaw, 1992 OK 21826 P.2d 978nunc pro tunc).

House of Realty, Inc. v. City of Midwest City, supra note 20.

See, e.g., General American Oil Co. v. Wagoner Oil & Gas Co., 1925 OK 820260 P. 780Henderson v. Pebworth, 1924 OK 772232 P. 74

Dank v. Benson, 2000 OK 405 P.3d 1088 Court does not adjudicate hypothetical questions).

Sanders v. Turn Key Health Clinics, 2025 OK 19566 P.3d 591Farley v. City of Claremore, 2020 OK 30465 P.3d 1213

In re Oklahoma Turnpike Auth., 2018 OK 88431 P.3d 59

McGee v. Alexander, 2001 OK 7837 P.3d 800Akin v. Missouri Pacific Railroad Co., 1998 OK 102977 P.2d 1040

Hirschfeld v. Oklahoma Turnpike Authority, 2023 OK 59541 P.3d 811

Latigo Oil & Gas, Inc. v. BP America Production, Co., 2024 OK 35549 P.3d 1252

Independent Schl. Dist. No. 52 of Okla. Cnty. v. Walters, 2024 OK 23546 P.3d 875de novo when resolving issues of law); Tres C, LLC v. Raker Resources, LLC, 2023 OK 13532 P.3d 1

In re Estate of Evans, 2024 OK 65556 P.3d 623Inst. for Responsible Alcohol Pol'y v. State of Okla., ex rel. Alcoholic Beverage Laws Enf't Comm'n, 2020 OK 5457 P.3d 1050Farmacy, L.L.C. v. Kirkpatrick, 2017 OK 37394 P.3d 1256de novo standard of review).

Farley v. City of Claremore, 2020 OK 30465 P.3d 1213

Keenan's standing is based upon his relation to OPERS. Application of Okla. Const. Art. XXIII, §12, disposes of Keenan's claim concerning OPERS. We expressly decline to expand the scope of our analysis to include additional provisions of the Oklahoma Constitution addressed by the District Court since their application is not necessary to adjudicate the EDEA's application to OPERS. We expressly decline to address application of the EDEA to state entities other than OPERS.

74 O.S. § 12002

Id. at p. 1, 8-9.

Id. at p. 10 (citing 74 O.S. §12003

Id. at p.2.

See also, State ex rel. Ind. School Dist. No. 1 Okla. Cnty. v. Barnes, 1988 OK 70762 P.2d 921

Id. at Tab 1, pg.1.

Id. at Tab 1, p. 13-14.

State ex rel. Blackhawk v. Dist. Crt. Of Osage Cnty., 1942 OK 114126 P.2d 255

See, e.g., Amoco Production Co. v. Lindley, 1980 OK 6609 P.2d 733

Revolution Resources, LLC v. Annecy, LLC, 2020 OK 97477 P.3d 1133

State ex el. Okla. State Dept. of Health v. Okla. Cnty. Criminal Justice Auth., 2025 OK 6571 P.3d 114citing, In re Guardianship of Berry, 2014 OK 56335 P.3d 779Smedsrud v. Powell, 2002 OK 8761 P.3d 891 Andrew v. Depani-Sparkes, 2017 OK 42396 P.3d 210

Stevens v. Fox, 2016 OK 106383 P.3d 269Id. at ¶3, 383 P.3d at 271.

Lowery v. Echostar, 2007 OK 38160 P.3d 959

Craig v. Craig, 2011 OK 27253 P.3d 57cf. David Partlett, Asbestos Wars: In Three Parts, 71 Wash. & Lee L. Rev. 759, 774 (When discussing theories for defining a legal relationship for legal liability the author noted: "Duty cannot exist in the air; it is a term of relation.").

Farley v. City of Claremore, 2020 OK 30465 P.3d 1213

74 O.S.Supp.2025, §91974 O.S.Supp.2025, §902

See, e.g., Branch Trucking Co. v. State ex rel. Okla. Tax Comm'n, 1990 OK 41801 P.2d 686

White v. Stitt, 2025 OK 68579 P.3d 636

Liddell v. Heavner, 2008 OK 6180 P.3d 1191

Id.

Liddell v. Heavner, supra note 60, at ¶16, 180 P.3d at 1200 (citing Reherman v. Okla. Water Res. Bd., 1984 OK 12679 P.2d 1296

Williams v. City of Norman, 1921 OK 337205 P. 144quoting Davis v. Burke, 179 U. S. 399, 21 Sup. Ct. 210, 45 L. Ed. 249 (1900)).

Associated Industries of Oklahoma v. Oklahoma Tax Commission, 1936 OK 15655 P.2d 79see also State v. Hejduk, 1951 OK CR 78232 P.2d 664

See, e.g., In re House Bill No. 145, 1951 OK 288237 P.2d 624

See, e.g., State ex rel. Blankenship v. Freeman, 1968 OK 54440 P.2d 744quoting Ex parte Hudson, 1910 OK CR 17106 P. 540

In re House Bill No. 145, supra note 65, at ¶¶15-18, 237 P.2d at 627 (simply using the term "shall" by itself in constitutional language is insufficient to create a mandatory and self-executing duty, limit, or power; and the term "shall" must be construed with the purpose and history of application, or context, and relate to the additional language in the provision).

State v. Hejduk, supra at note 64.

Zachary v. City of Wagoner, 1930 OK 440292 P. 345

74 O.S. § 12002

A. As used in the Energy Discrimination Elimination Act of 2022:

1. "Boycott energy company" means, without an ordinary business purpose, refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict economic harm on, or limit commercial relations with a company because the company:

a. engages in the exploration, production, utilization, transportation, sale, or manufacturing of fossil-fuel-based energy and does not commit or pledge to meet environmental standards beyond applicable federal and state law, or

b. does business with a company described by subparagraph a of this paragraph

Childers v. Arrowood, 2023 OK 74541 P.3d 825

See, e.g., City of Okla. City v. Okla. Corp. Comm., 2024 OK 77558 P.3d 1231

Matter of B. H., 2022 OK 80519 P.3d 91Poff v. Lockridge, 1908 OK 20998 P. 427cf. Christian v. Gray, 2003 OK 1065 P.3d 591

75 O.S.2021, § 11a

1. For any act enacted on or after July 1, 1989, unless there is a provision in the act that the act or any portion thereof or the application of the act shall not be severable, the provisions of every act or application of the act shall be severable. If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:

a. the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or

b. the remaining valid provisions or applications of the act, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Pioneer Tel. and Tel. Co. v. State, 1914 OK 27138 P. 1033

ROWE, C.J., DISSENTING: 

¶1 The Oklahoma Constitution reserves all political power in the people. Okla. Const. art. II, § 1. One way the people exercise their political power is by electing legislators to enact laws that implement constitutional provisions for the public benefit. Okla. Const. art. XXIII, § 12 states:

All the proceeds, assets and income of any public retirement system administered by an agency of the State of Oklahoma shall be held, invested, or disbursed as provided for by law as in trust for the exclusive purpose of providing for benefits, refunds, investment management, and administrative expenses of the individual public retirement system, and shall not be encumbered for or diverted to any other purpose.

(emphasis added). The Constitution commands that retirement funds "shall be held, invested, or disbursed as provided by law." 

¶2 The phrase "as provided by law" confirms that § 12 is not self-executing. "A provision is self-executing when it can be given effect without the aid of legislation." Latting v. Cordell, 1946 OK 217172 P.2d 397how retirement funds are invested and administered. That authority includes discretion to define permissible and impermissible investments.

¶3 The Energy Discrimination Elimination Act of 2022, 74 O.S. §§ 12001how funds may be invested by identifying certain financial relationships as impermissible. That determination falls squarely within the Legislature's delegated discretion conferred by "as provided by law" in § 12.

¶4 Accordingly, I respectfully dissent from the Majority Opinion as I would find the Act is constitutional.

FOOTNOTES

KUEHN, V.C.J., Dissenting:

¶1 Plaintiff attempts to challenge the constitutionality of an Act of the Legislature. But this is the wrong plaintiff and the wrong defendant to bring such a challenge. I would find neither standing nor a justiciable controversy. I dissent to the Majority's decision to address the substantive issues raised in this appeal.

¶2 First, the Treasurer is the wrong defendant. The Legislature enacted the Energy Discrimination Elimination Act of 2022. 74 O.S. §§ 1200174 O.S. § 1200374 O.S. § 12002

¶3 Any state entity engaging in investment for a retirement system, subject to the Act, is exempt from its provisions if the entity itself determines that the Act's requirements are inconsistent with its fiduciary responsibilities in investing or as otherwise provided by law. 74 O.S. § 1200274 O.S. § 1200374 O.S. § 1200374 O.S. § 12003

¶4 The Treasurer's responsibilities revolve around creation, maintenance, dissemination, and publicizing the list of prohibited companies. 74 O.S. § 1200374 O.S. § 1200374 O.S. § 12004

¶5 Here, the original Plaintiff was a beneficiary of the Oklahoma Public Employees Retirement System (OPERS). After the Act became law, the Treasurer gave OPERS the list of prohibited companies. OPERS determined that, as a state entity, it fell within the statutory exceptions and did not divest under the Act. OPERS notified the appropriate authorities, including the Treasurer, as required by the Act. The Treasurer sent OPERS a letter asking that it reconsider its determination, and OPERS declined.

¶6 When OPERS declined to reconsider its determination, the matter ended. There is no controversy for a court to review. The District Court purported to enter an injunction preventing the Treasurer from enforcing the Act. But the Treasurer never had that authority. The Majority describes the language in the Treasurer's letter, which was apparently designed to persuade OPERS to reconsider. However, neither the district court nor the Majority seems to have understood-as OPERS evidently did-that the Treasurer's letter itself has no force of law. The Treasurer may not like OPERS' decision but, under the Act, he can't do anything about it. Thus, the Treasurer is simply the wrong defendant. Nobody with the authority to enforce the Act has attempted to enforce it against OPERS. There was no live controversy before the district court.

¶7 I would also find that original Plaintiff lacks standing. The Majority appears to find that original Plaintiff had standing based on an analogy to taxpayer standing. As the Majority notes, original Plaintiff's standing argument rested not on a claim of fiduciary duty, but that he was a taxpayer and an OPERS beneficiary. He claimed that his interests were threatened by the official divestment policy expressed in the Act, because as a state employee he had contributed to the funds managed by OPERS, and he was a beneficiary of the OPERS retirement system. Original Plaintiff claimed that OPERS funds were being unconstitutionally administered by the Treasurer's application of the Act to OPERS, and challenged that application. The Majority notes that taxpayer standing may be appropriate where a plaintiff claims public funds are administered contrary to law and requests as relief a judgment requiring that the funds be legally administered equally to all taxpayers. Without further explanation the Majority states that original Plaintiff's situation is comparable to that of such a taxpayer.

¶8 Let us be clear. This is not taxpayer standing. I need not discuss whether I agree that original Plaintiff could have had taxpayer standing, because that is not the basis of the Majority's ruling. The Majority has apparently created a separate category of standing: it allows a suit by a retirement system beneficiary who cannot show damages of any kind, including threats to the OPERS funds from official policy as expressed in the Act, because the Act was never successfully applied to the OPERS funds. OPERS never divested under the terms of the Act. And at the risk of repeating myself I note that Plaintiff's chosen defendant had no power to make OPERS do so.

¶9 I understand that original Plaintiff, plus the persons or entities pressing the suit after his death, want to challenge the constitutionality of the Act. But process matters. Parties matter. If citizens want to resolve this question in the courts, they must find the appropriate plaintiff and the appropriate defendant for that challenge. Neither is present in this case. Because I find neither a justiciable controversy nor standing, I express no opinion on the substantive issues. I dissent.

KANE, J., dissenting:

¶1 Through no fault of the tragically departed Appellee, the majority proceeds forward with a case that either needs a new party substituted, or else necessarily stands as abated. Since the Court has elected to proceed forward without a real party in interest to stand in the shoes of the late Appellee, I believe the action is abated.

¶2 The effect of the death of the Appellee upon the subject litigation is profound. It terminated any meaningful opportunity for the Court to seek additional briefing or to engage in an oral argument of the propositions presented.

¶3 I take no position on the novel question of the power of the Court to order substitution on appeal, as the majority has dispensed with the question as unnecessary. I take no position on the merits of the litigation, as this action is no longer procedurally viable. If an action is abated, the Court loses jurisdiction, and the underlying judgment in this matter should be vacated.

¶4 I respectfully dissent.